# Rittenberry, *et al. v.* Wharton.

*Bill to Set Aside and Annul Decree of Final Settlement.*

(Decided April 2, 1912.  58 South. 293.)

1. *Judgment; Setting Aside; Probate Decree.*—Where no fraud is practiced in the procurement of the decree itself, equity will not interfere with the probate decree, except on grounds of which complainant could not have availed himself at the time of its rendition, because of accident, fraud, or the act of his adversary unmixed with fault on his own part.

[Rittenberry, et al. v. Wharton.]

2. *Guardian and Ward; Settlement.*—The bill considered and its averments stated and held to show fraud in the procurement of the probate decree making the guardian settlement, and that it is not demurrable.

3. *Same; Agent of Guardian.*—Where a guardian delegated the administration of her trusts to her husband, she was responsible for his action in the premises.

4. *Same; Decree of Settlement; Setting Aside.*—The fact that the ward was represented by a guardian ad litem does not render a decree settling the accounts of the ward's general guardian immune from impeachment in equity for fraud.

5. *Same.*—Where by the promises of her guardian's agent and husband a ward was induced not to attack the probate decree approving final settlement of the guardianship until long after the regular term of the probate court had expired, her failure to ask relief in such court did not prevent her maintaining a suit in equity to set aside the decree.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Maybelle Wharton against Kate Rittenberry and her sureties, to set aside and annul a decree of final settlement of the guardianship and to reopen and settle guardianship accounts. From a decree overruling demurrers to the amended bill, respondents appeal. Affirmed.

HOWZE & HOWZE, and COLEMAN, DENT & WEIL, for appellant. The decree of the probate court is conclusive on all matters which were involved on the issues upon which adjudication was held.—*Warring v. Lewis,* 53 Ala. 615; *Otis v. Dargan,* 53 Ala. 178. A decree cannot be brought into question except for some special cause for equitable jurisdiction, and if fraud is alleged it must be unmixed with fault or negligence on complainant's part, and connected with the proceedings resulting in the judgment, and the fact showing fraud must be clearly and distinctly averred.—Freeman on Judgment, sec. 485; *Warring v. Lewis, supra; Waldron v. Waldron,* 76 Ala. 285; *Barron v. Robinson,* 98 Ala. 351. Applying these principles, it clearly appears that

the averments of the bill were not sufficient. The bill is fatally defective as it shows that there was fault or negligence on the part of the complainant in reference to the settlement.—Authorities supra, and *Foshee v. Mc-Creary,* 123 Ala. 493. The fraud must be intimately connected with the proceedings by which the decree was obtained.—*Seals v. Weldon,* 121 Ala. 319; *Watts v. Frazer,* 80 Ala. 186; Freeman on Judgments, 488. The ward was properly represented by a guardian ad litem on the hearing, and had her day in court.—*Frierson v. Travis,* 39 Ala. 150; *Preston v. Dunn,* 25 Ala. 507; *Levystein Bros. v. O'Brien,* 106 Ala. 352. The appointment of the guardian ad litem by the court was sufficient.—*Stakler v. Cork,* 57 Ala. 22; Sec. 4435, Code 1907. The complainant could have obtained her relief by application to the probate court.—*Nat. Fert. Co. v. Henson,* 103 Ala. 532; *Roebling v. Stevens,* 93 Ala. 39. Therefore, the bill should have shown some reason good in law for failing to make application to the probate court. In addition to the above authorities we beg to call the court's attention to *Adler v. Van Kirk L. & Com. Co.,* 114 Ala. 551; *Humphries v. Burleson,* 72 Ala. 1; *Noble v. Moses,* 74 Ala. 604; *Cromelin v. McCauley,* 67 Ala. 542; *Curry v. Peebles,* 83 Ala. 227; *Braswell v. Townsend,* 57 Ala. 308.

GEORGE HUDDLESTON, for appellee. Attention is called in the beginning to a case strikingly similar to the one at bar.—*Cox v. Johnson,* 80 Ala. 22. There was no pretense of a compliance with section 4436, Code 1907, and the decree is void for want of jurisdiction, unless the probate court in itself is the guardian of minors, and may give judgment against them without cause. It is not such a court as it has no jurisdiction in such matters except that conferred by statute.—*Lewis v. Allred,*

57 Ala. 628; *Moore v. Winston,* 66 Ala. 296; *Herring v. Ricketts,* 101 Ala. 340; *Gassenheimer v. Gassenheimer,* 108 Ala. 651. The decree of the chancery court relieves the minors of all the disabilities of non-age except the power to release the guardian. The court has authority to so limit its decree, and hence, the ward was not empowered to sign the paper alleged to have been signed by her, acquitting the guardian, and waiving notice of the final settlement. A guardian cannot make a final settlement so long as the relation exists and remains. —*Lewis v. Aldridge, supra; Lee v. Lee,* 67 Ala. 406; *Glass v. Glass,* 76 Ala. 371. It appearing that the court was not complainant's guardian, and that the appointment of the guardian ad litem in the manner made did not give jurisdiction of her person, it follows that the decree is void, unless complainant appeared or in some valid way waived service of process on her.—*Turrentine v. Daly,* 82 Ala. 205; *Cox v. Johnson, supra; Craft v. Dexter,* 8 Ala. 767; *Stubbs v. Leavitt,* 30 Ala. 352; *Martin v. Barnett,* 20 Ala. 369; *Robinson v. Reed,* 50 Ala. 69. The bill sufficiently alleged fraud in procuring the release.—*Willis v. Rice,* 141 Ala. 168; s. c. 157 Ala. 252; *Couch v. Couch,* 148 Ala. 342; *Humphries v. Burleson,* 72 Ala. 1; *Ferguson v. Lowery,* 54 Ala. 510. Counsel refers to and criticizes cases cited by appellant as inapplicable to the matters here involved.

DOWDELL, C. J.—This appeal is taken from a decree overruling the demurrers to the complainant's amended bill.

The bill was filed by Mrs. Wharton, the appellee, against Mrs. Rittenberry, the appellant, as complainant's former guardian, and the United States Fidelity & Guaranty Company, surety on the guardian's bond, to set aside and annul a decree of final settlement of the

guardianship, rendered by the probate court, on the ground of fraud, and to reopen and settle the guardianship accounts.

The case made by the bill is, in brief, as follows:

When the complainant was in her fourteenth year, her father died; her mother having died several years previously. Complainant's older sister, Mrs. Rittenberry, applied for and was appointed her guardian by the probate court of Jefferson county in 1903, and made no final settlement, except the one attacked by the bill; and no proceedingings for final settlement were pending in any court. Complainant regarded her said sister as the head of the family, resided with her until shortly before the bill was filed in 1910, and submitted to her authority, guidance, and control, as well as to her management of complainant's affairs, until complainant's marriage in 1909. Respondent's husband, Baxter Rittenberry, had large influence over complainant in all business matters, and largely and chiefly had charge of the guardianship matters and of complainant's property, although acting in the name of his wife and with her authority and permission; and the acts complained of were done by him as his wife's agent, and within the scope of his authority as such, though, in the belief of the complainant, the respondent, her said sister, had not at all times had full knowledge of her husband's acts in the administration of such guardianship. Complainant regarded her sister's husband as a brother, trusted him, and relied upon his advice and good faith. Complainant, while fairly well educated in literary branches, had no business education nor experience, and as to such matters generally relied upon and accepted the advice of her sister and of her brother-in-law.

In October, 1908, complainant, then having become about 19 years of age, became dissatisfied with the way

her affairs were being managed by respondent and her
said agent, and told them that she desired her disabili-
ties of nonage removed, which they at first objected to,
but later agreed to have done. And on October 26, 1908,
her sister and her sister's husband caused the attorneys
who had been representing Mrs. Rittenberry in such
guardianship to file a petition to have her disabilities
removed; but her sister's husband, making sundry ex
cuses, delayed the matter until June 22, 1909, when the
decree was finally rendered; and this delay was to
stave off a settlement, and to retain his control and
the benefit of complainant's funds and property as
long as possible.

Said decree provided that complainant, then May-
belle Moran, "be and she is relieved of the disabilities of
nonage, and she is vested with the power to sue and be
sued, contract, and be contracted with, to buy, sell, and
convey real estate, and generally to do and perform all
acts which said minor could do, if 21 years of age, ex-
cept that she may make acquittance to her guardian
only after a settlement in the probate court where her
guardianship is pending, in which she shall be repre-
sented by a guardian ad litem, in which she may ac-
cept service and waive time and notice." Dated June
22, 1909.

On said June 22, 1909, while complainant was sick
in her room in her sister's residence, respondent's said
husband and agent presented to her a writing, which
he represented to her was her consent that she be re-
lieved of her disabilities of nonage by the court, and
that it was necessary for her to sign the same; and that,
relying on and believing such statement, she signed and
delivered to said Baxter Rittenberry a paper, reading as
follows (except that the name of the guardian ad litem
was then in blank) : "In the Probate Court of Jefferson

County, Ala. In the Matter of the Estate of Maybelle
Moran. I, the said Maybelle Moran, having this day
been relieved of the disabilities of nonage by the chan-
cery court of Jefferson county, Ala., do hereby nominate
David J. Davis, Esq., of said county and state, as my
guardian ad litem, to represent me upon final settle-
ment of the accounts of my guardian, Mrs. Kate Rit-
tenberry, in the probate court of said county, same
being in accordance with the decree of said chancery
court relieving me of the disabilities of nonage. I do
also hereby waive notice of the time of making said
final settlement, and I do hereby consent that the same
may be heard any time that may be agreed upon by said
guardian ad litem. This 22d day of June, 1909. May-
belle Moran. Attest: Baxter Rittenberry." That com-
plainant did not understand the purport of said writ-
ing, nor think it other than Baxter Rittenberry had rep-
resented it to be; nor did she at any time contemplate
or agree that there should be a final settlement of her
guardian's accounts without notice to her, and without
an oportunity on her part to be present, nor that said
Davis should represent her as guardian ad litem. That
in obtaining her signature to said paper said Ritten-
berry was acting as her guardian's agent, and with the
intent to injure, defraud, and deceive complainant, and
to prevent a fair and equitable settlement of her ac-
counts.

The final settlement in the probate court was put
through the next day, June 23, 1909, said David Davis
being appointed by the court as her guardian ad litem,
filing his consent and formal contest of the settlement,
but that said settlement was had without complainant's
presence or knowledge, and without notice to her by
service of process or otherwise. That, prior to that time,
respondent had told her that as soon as her disabilities

were removed her property would be turned over to her.
On the morning of June 23, 1909, respondent's said hus-
band requested her to meet him at a later hour in the
day at a certain bank in Birmingham, where he would
pay her the money that defendant held as her guardian.
That at the appointed time and place respondent's hus-
band, accompanied by respondent's attorney, paid com-
plainant $3,683.21, and said attorney presented to her
a receipt in writing, to be signed, which said Ritten-
berry represented was a receipt for the money paid her,
and which she did sign. It was as follows: "$3,683.21.
Received of Kate Rittenberry thirty-six hundred eighty-
three and 21/100 dollars in cash, same being the balance
as ascertained by the probate court of Jefferson county,
Ala., to be due me, and I also acknowledge receipt of
my one-half interest in the Locassio note and mortgage,
which mortgage is recorded in office of judge of probate
of Jefferson county, Ala., vol. 392, p. 183; same being
in full settlement of my estate by said Kate Rittenberry
as my guardian.. This 23rd day of June, 1909. May-
belle Moran. Attest: W. J. Wynn." That said final
settlement had not been had when the receipt was sign-
ed; and hence complainant was made to exceed the pow-
ers of acquittance provided for in the decree relieving
her of disabilities. That said receipt did not speak
the truth. That in signing same complainant intended
merely to acknowledge payment of the sum therein
named. That she did not know defendant wished to
use same in making a final settlement, and that, though
defendant's agent and attorney well knew at the time
they procured her signature that said settlement would
be had on that day, said agent concealed that fact from
her, with the design to prevent her presence.

The bill sets out a copy of the accounts of the guar-
dian, filed June 23, 1909, and of the decree of final set-

tlement rendered by the probate court on the same day, approving the accounts and discharging Mrs. Rittenberry as guardian. Said accounts show a total debt of $11,957.27, and total credits of $8,274.06, leaving a balance due the ward of $3,683.21.

The bill avers that one of the items of credit, to wit, "By amount paid Frank Saunders for house and lot for ward, $4,750," is false and fraudulent. That, to induce the court to allow such credit, the guardian, or her husband or attorney, presented to the court as a voucher a writing, as follows: "Received of Kate Rittenberry, guardian for Maybelle Moran, $4,750.00 for one house and lot on St. Chas. St. No. 1505, in Birmingham, Jefferson county, Ala. This 15th day of May, 1909. Frank Saunders." That on said May 15, 1909, said Baxter Rittenberry and Frank Saunders owned said house and lot jointly. Several months prior to the settlement, Baxter Rittenberry had urged complainant to buy this house and lot, and she had refused. That on April 8, 1909, said Rittenberry and Saunders mortgaged the same, the guardian joining therein, for $3,000; the principal sum falling due in 1914. That after the date of the above receipt, wherein Frank Saunders acknowledges payment of $4,750 for the property by the guardian, Baxter Rittenberry and his wife, on May 29, 1909, executed a deed to said Saunders, conveying a half-interest in said property, expressing a consideration of $450, and that in July, 1909, after the settlement, Saunders executed a deed to complainant to said property, expressing a consideration of "$450.00 and other valuable considerations." Neither of these deeds mentions the incumbrance, and the deed from Saunders to complainant was not delivered to complainant; but the bill avers, on information and belief, that it was delivered to Baxter Rittenberry, who filed it for record on July 20, 1909.

It is further averred that $4,750 is the full value of the property, free from incumbrance. That the probate court was not advised that said property was mortgaged for $3,000, which with interest, still exists, and that the value of the property above the mortgage is not more than $1,500. That the transactions between the respondent, her husband, and said Saunders were colorable merely, and made for the purpose of unloading the property on complainant and covering a deficiency in the guardianship funds created by the unwarranted and unlawful use thereof by respondent or her said husband and agent. That defendant did not pay $4,750 for the property; or, if so, she acted with knowledge of the incumbrance and of the true value of the property, and consciously paid an extravagant and unjust price therefor. That complainant does not believe her said sister was advised as to such transaction, but acted ignorantly and upon the instruction of her said husband, who was thereby seeking to defraud complainant.

That a few minutes after said Baxter Rittenberry had secured the receipt from complainant, acknowledging a full settlement of the guardianship, he told her that he had bought said property for her, meaning that he, as respondent's agent, had bought same. Complainant then remonstrated with him and refused to abide by his action, and refused to accept the property, and that he finally told her she need not take it, and that he would pay her for it, and that he has frequently repeated such promise, asking additional time, finally obtaining an extension to January 12, 1910, when he again failed to pay and asked for more time, which complainant declined to grant, and the amount of such credit has never been refunded to complainant, and that she has at all times refused to accept said property, or treat it as her own, and has never been in possession

of same, and that complainant has always insisted that the respondent and her said husband should pay her the amount for which respondent had obtained credit. That on July 28, 1909, complainant married, and has not since then lived with her said sister.

Such is the case made by the bill. The grounds of defendant's demurrers are, in substance, that the decree of the probate court on final settlement, as shown by the bill, is conclusive, being the decree of a court of competent jurisdiction, whose jurisdiction is shown to have attached; that if assailable on the ground of fraud, the fraud alleged must be shown to have been practiced in the rendition or procurement of the decree, and not as to antecedent matters relating to the merits of the controversy concluded and settled by the decree, as, it is contended, is the case made by the bill; that, if fraud be shown in connection with the procurement of the decree, it is not shown to have been such as proved injurious to complainant, or such as would render the decree void, it being contended that the appointment of a guardian ad litem, without notice, is a mere irregularity, and a waiver of notice, though fraudulently obtained, could be no more, neither furnishing good ground for a collateral attack; that the acts complained of in the bill as fraudulent are shown to be the individual acts of Baxter Rittenberry, who is not made a party, and for which acts the guardian, as such, is not shown to be responsible or chargeable; that the bill fails to negative fault or negligence on the part of the complainant in permitting the rendition of the decree, but, on the other hand, shows her to have been negligent; that it is not shown that complainant could not have obtained the relief prayed for by application to the court rendering the decree, or that such application was made. The grounds of demurrer, when applied to the particular state of

facts shown by the bill, are clearly not well taken, except as to paragraph 12, which was stricken by the court below, and is therefore not involved in this appeal.   Nor is there any contention by either side that the bill is one filed to correct errors of law or fact in the final settlement under sections 3914 to 3916 of the Code.

It is, of course, a well-settled doctrine, from which we have no intention of departing, that a court of equity is not an appellate court, and in cases where such courts have jurisdiction, and that jurisdiction has attached, will not interfere with the judgment of a court of law or the decree of a court of probate, nor detract from its conclusiveness, nor reopen the litigation involved in its rendition, unless on facts or grounds of which the party complaining could not have availed himself, when the decree or judgment was rendered, because of accident, or the fraud or act of his adversary, unmixed with fault or negligence on his part.   There must be some special and recognized cause for equitable interference, or the judgment will remain in positive bar to future litigation at law or in equity.—*Waring v. Lewis,* 53 Ala. 615; *Waldrom v. Waldrom,* 76 Ala. 285; *Foshee v. Mc-Creary,* 123 Ala. 493, 26 South. 309.   It is also well settled that "fraud as to transactions antecedent to the judgment, such as would have constituted a good defense to the rendition of the judgment, but not connected with the proceedings by which it was obtained, is deemed insufficient to justify relief under the head of this equitable ground of jurisdiction."   If a cause of action is vitiated by fraud, this is a defense which ought to be interposed to the granting of the judgment or decree, and, unless the interposition of this defense is prevented by fraud, it cannot be asserted against the judgment; for judgments are impeachable for those frauds only which are extrinsic to the merits of the case, and

by which the court has been imposed upon, or misled into a false judgment. The fraud must be practiced in the rendition or procurement of the judgment or decree. —Freeman on Judgments, § 489; *Watts v. Fraser,* 80 Ala. 186; *Seals v. Weldon,* 121 Ala. 319, 25 South. 1021; *Waring v. Lewis, supra; McDonald v. Pearson,* 114 Ala. 630, 21 South. 534.

It will be observed that the sometimes harsh, but necessary rule that a court of equity will not reopen a judgment of another court to enable a party to make a defense which might have been made in the original case is subject to the important and logical qualification that the party must not have been prevented from making the defense by the fraud of his adversary, unmixed with fault or neglect on his part. Where fraud is practiced in the procurement of the judgment itself, equity will relieve against it, if the complainant acted with due diligence and was without fault.

The case, as made by the bill, meets the requirements of these principles, and is clearly free from the defects charged by the demurrers of the respondents. Taking the facts charged in the bill as admitted by the demurrer, we have an unjust and unconscionable decree, embracing a false credit to the extent of several thousand dollars, procured by the guardian, or her alter ego, her husband and agent, against the ward, a young and inexperienced sister, by taking advantage of the relations of trust and confidence existing between the parties, by concealing from her the unjust purchase of the heavily mortgaged house and lot until after her signature had been obtained by false representations to the waiver of notice of time and place of final settlement and the receipt and acquittance of her guardian, then putting through the final settlement at once, without the ward's knowledge, and before she had had a fair opportunity

to investigate and ascertain the status of her affairs and her rights and remedies in the premises, and also without advising her or the court, whose decree was obtained the same day the accounts were filed, that the property represented by the account as purchased for $4,-750 was mortgaged for $3,000. Thus the fraud alleged entered into the procurement of the decree; and, in view of the facts and circumstances averred in the bill, and of the fiduciary relations existing between the parties, imposing the duty upon the guardian of making a full and frank disclosure of the true situation to the ward, the ward cannot be held chargeable with such negligence as would estop her from assailing said decree. Even if she had been present at the final setlement, with the fraud still concealed from her, the result would doubtless have been the same.

It is to be noted that the person who delayed the removal of the ward's disabilities, and who procured her signature to the waiver of notice and the release, was her brother-in-law, in whose home she resided; that the guardian was the ward's elder sister, occupying, in substance, the position of a mother; that the ward was sick in her room when the waiver of notice and nomination of a guardian ad litem was obtained; that the settlement involved accounts aggregating many thousand of dollars, comprising the ward's entire estate; that a deliberate fraud in connection with the purchase of the house from Saunders was in contemplation, which was concealed from the ward; that the hearing was had in the probate court immediately upon the filing of the account, and with unnecessary haste after the decree of the chancery court, removing the ward's disabilities of nonage; and that the guardian and her husband stood in fiduciary relations of the strongest type to the ward.

The case of *Willis v. Rice*, 141 Ala. 168, 37 South.

507, 109 Am. St. Rep. 26, is, in some respects, similar to the instant case. The court says: "That the chancery court has jurisdiction to compel the settlement of a guardianship is beyond question; and, the present bill being for that purpose, on the facts stated, the court may and will, under the general prayer, in order to have such settlement, set aside the decree of the probate court discharging the guardian, when it is shown that the decree was procured by him through fraud or other improper conduct. There is no merit in the assignment that it is not shown how the respondent took advantage of the complainants in the matter of signing the paper acknowledging full settlement. His relation was one of greatest confidence and trust, and called for the utmost good faith. It was his duty to fully inform them of their rights in all respects. It is charged that he took advantage of their youth and inexperience and of his influence over them in getting them to sign the paper, which, they further charge, was untrue in its statements. This was sufficient. They were his wards, and from tender years had lived with him, and grown up under his care and control; and it requires no effort to understand how easily they might be influenced by him against their interests. The assignment that no injury is shown to have resulted to complainants by reason of the decree discharging the respondent is equally without merit."

In the case quoted from, the ward had become of age when the paper referred to was signed by her.

On another appeal in the same case (157 Ala. 252, 48 South. 397, 131 Am. St. Rep. 55), it was said: "Courts of equity will not permit transactions between guardians and wards to stand, even where they have occurred after the minority has ceased, and the relation become thereby actually ended, if the intermediate pe-

riod be short, unless the circumstances demonstrate, in the highest sense of the terms, the fullest deliberation on the part of the ward and the most abundant good faith on the part of the guardian. * * * Taking from the wards receipts in full, and obtaining from them directions in writing to the judge of probate to discharge the guardian as on final settlement, were acts into which it was the sacred duty of the guardian not to invite the ward, without a just accounting and full settlement, or the disclosure of every fact necessary to inform the ward of all with which she was parting, and then committing it to her uninfluenced will whether she would give the receipt or direction, or not. * * * This the law exacts as a necessary protection of a class of persons liable to be made the victims of the artful."

In the case of *Humphreys v. Burleson,* 72 Ala. 1, it was shown that an administrator, on filing his accounts for settlement, wrote to his sister, who was a distributee residing in Texas, informing her that her interest in the estate was a specified sum, about one-fifth of its actual value, and inclosing a receipt for that sum, which would operate as a release, and which was signed and returned to him, and the money paid. Held, that this was a fraud against which a court of equity would grant relief by setting aside the settlement; and that the administrator could not be heard to say that the distributee, in relying on his representations and failing to appear and contest the settlement, was guilty of negligence or other fault. See, also, *Cox v. Johnson,* 80 Ala. 22.

The respondent guardian cannot justly contend that the decree should be allowed to stand, because the frauds complained of were the acts, not of herself, but of her husband, for which, as such guardian, she is not responsible. The bill shows that she either expressly authorized or consciously permitted the husband

to administer the guardianship for her, and ratified his administration thereof by verifying the final account by her affidavit. The bill expressly avers that the acts complained of were done by the husband as his wife's agent; that he chiefly had charge of the guardianship matters, acting in his wife's name with her authority and permission, though, in complainant's belief, the guardian did not always have full knowledge of his acts. When a guardian delegates the administration of the solemn trust imposed by the guardianship to another, the guardian must be held responsible for the other's actions in the premises; otherwise the purposes of guardianship might be frustrated, and the security afforded the ward by the guardian's bond dissipated, by the delegation of the guardian's authority to unfit or irresponsible agents. Hence the acts of the guardian's chosen agent must be, as a general rule, imputed to the guardian in all matters relating to the administration of the guardianship trust.

From the view we take of this case, the decree of final settlement is not binding upon the ward, and should be set aside upon the ground of fraud in its procurement, by which fraud the complainant was prevented from availing herself of a defense to the judgment, a defense which it was the solemn duty of the guardian procuring the decree to disclose, rather than conceal—a fraud by which, also, the court was imposed upon and misled into a false judgment; and that, in view of the complainant's right to rely upon the good faith imposed by the existing fiduciary relations, the respondent guardian cannot be heard to charge complainant, nor is she legally chargeable, with such laches as would preclude her from assailing such decree. And this conclusion, to our mind, is sound, irrespective of the questions as to whether the probate court had secured jurisdiction

of the person of the ward in the proceeding for final settlement, or as to whether the appointment of the guardian ad litem was valid, or not, both of which are doubtful questions, which it is not necessary here to decide. If the probate court had not secured jurisdiction of the ward's person, then its decree was a nullity, and the bill lies to remove the settlement to the chancery court.—*Cox v. Johnson*, 80 Ala. 22. If said court had such jurisdiction, and yet its decree was unjust and fraudulently procured, without the fault of complainant, it is subject to annulment in a court of equity.

It is no answer to the conclusion herein reached to say that the complainant was represented by a guardian ad litem, even if it be conceded that the guardian ad litem was lawfully appointed; for it appears from the bill that the nomination and appointment of the guardian ad litem was fraudulently procured and constituted one of the steps by which the decree itself was fraudulently obtained. The authorities cited in support of this contention do not go to the extent of holding that representation by a guardian ad litem renders a judgment immune from the impeachment upon recognized grounds of equitable interference, such as fraud, for which a judgment is impeachable, whether the complainant be an infant or adult.

Nor is the complainant's bill without equity, because it fails to show an application first in the court where the decree was rendered. The rendition was on June 23, 1909. The respondent's agent promised to reimburse complainant, who repeatedly extended the time until January 12, 1910, at his request and on his promise, long after the regular term of the court had expired. But we are not to be understood as holding that it was essential to show this before invoking the aid of the equity court.

[Gainer, et al. v. Jones.]

The lower court committed no error in overruling the demurrers, and its decree must be affirmed.

Affirmed.

SIMPSON, ANDERSON, SAYRE, and SOMERVILLE, JJ., concur. McCLELLAN and MAYFIELD, JJ., not sitting.