## ANDERSON v. STATE et al.

No. 4270. Decided July 6, 1925. Rehearing denied August 1, 1925.
(238 P. 557.)

1. JUDGMENT—COURT HAS NOT DISCRETION IN SUIT TO SET ASIDE JUDGMENT IN BASTARDY PROCEEDINGS FOR NEWLY DISCOVERED EVIDENCE WHICH TRIAL JUDGE IN SUCH PROCEEDINGS HAS ON MOTION FOR NEW TRIAL. In suit in equity under Comp. Laws 1917, tit. 9, to set aside judgment in bastardy case, court has not discretion to set aside judgment because if it had been sitting in trial of case it would have granted new trial for newly discovered evidence.

2. JUDGMENT—RULES GOVERNING COURT OF EQUITY IN VACATING JUDGMENT ON GROUND OF FRAUD, STATED. As a general rule, in suit in equity to vacate judgment for fraud it must be shown beyond reasonable doubt that fraud relied on was extrinsic and not such as could have been apprehended and met on the trial, and that, if fraud had not been present, judgment would not have been rendered, and party seeking relief must have been free from negligence in trial; mere perjury committed at trial not being such fraud as authorizes vacation of judgment.[1]

3. JUDGMENT—EVIDENCE OF COLLUSION AND FRAUD BY WITNESSES IN BASTARDY CASE HELD NOT SUFFICIENT AS GROUND IN EQUITY TO SET ASIDE JUDGMENT. In suit in equity to set aside judgment in bastardy case, evidence establishing that prosecutrix and her mother were guilty of collusion, fraud, and perjury *held* not sufficient to set aside judgment, in view of other evidence tending to uphold such judgment.

4. JUDGMENT—TO SET ASIDE JUDGMENT FOR FRAUD, IT MUST SATISFACTORILY APPEAR THAT BUT FOR FRAUD JUDGMENT MUST HAVE BEEN OTHERWISE. In suit in equity to set aside judgment in bastardy case for fraud, evidence showing that, if truth had been told in such case, plaintiff might not have been convicted, is not sufficient, but it must satisfactorily appear that, but for fraud, judgment must have been otherwise.

5. JUDGMENT—PERSON CONVICTED IN BASTARDY CASE, NEGLIGENT IN DISCOVERY OF EVIDENCE, HELD NOT ENTITLED TO HAVE CONVICTION SET ASIDE IN SUIT IN EQUITY. Where one convicted in bastardy case resided near prosecutrix, who lived in small country town, and apparently made no effort to discover whether any one

[1] *Cantwell* v. *Thatcher Brothers Banking Co.*, 47 Utah, 150, 151 P. 986.

else might be guilty party, he did not employ sufficient diligence in discovery of evidence to have conviction set aside by suit in equity on ground that prosecutrix and her mother fraudulently conspired to secure conviction and were guilty of perjury.

6.  EVIDENCE—COURT TAKES JUDICIAL NOTICE THAT DISTANCE BETWEEN BOTHWELL, IN BOX ELDER COUNTY, AND SOUTH WEBER, IN WEBER COUNTY, IS NOT GREAT.  Court takes judicial notice that distance between Bothwell, in Box Elder county, and South Weber, in Weber county, is not great.

7.  BASTARDS—EVIDENCE OF ASSOCIATION OF PROSECUTRIX WITH OTHERS THAN ACCUSED IS MATERIAL AND COMPETENT IN BASTARDY CASE.  In bastardy case, evidence of association of prosecutrix with others than accused is material and competent.

8.  JUDGMENT—EQUITY WILL NOT SET ASIDE JUDGMENT ON GROUND OF FRAUD, IF PARTY SEEKING RELIEF WAS NEGLIGENT IN PROCEEDING TERMINATING, IN JUDGMENT COMPLAINED OF.  If party seeking to have judgment set aside as being obtained by fraud was guilty of negligence in proceeding which terminated in such judgment, equity will not grant relief.[2]

Appeal from District Court, First District, Cache County; *M. C. Harris*, Judge.

Suit in equity by Roland Anderson against the State of Utah and others to set aside an adverse judgment in bastardy proceedings.  Judgment for defendants, and plaintiff appeals.

AFFIRMED.

*J. D. Skeen*, of Salt Lake City, for appellant.

*LeRoy B. Young*, of Brigham City, for respondents.

2 *Kennedy* v. *Burbidge*, 54 Utah, 497, 183 P. 325, 5 A. L. R. 1682; *Cantwell* v. *Thatcher Brothers*, 47 Utah, 150, 151 P. 986.
Headnote 1.   34 C. J. p. 478 (Anno.).
Headnote 2.   34 C. J. pp. 433, 471, 472, 473, 474, 475, 496.
Headnote 3.   34 C. J. p. 496.
Headnote 4.   34 C. J. p. 474.
Headnote 5.   34 C. J. pp. 433, 479, 496.
Headnote 6.   23 C. J. p. 86.
Headnote 7.   7 C. J. p. 990.
Headnote 8.   21 C. J. p. 779, 34 C. J. pp. 433, 474, 479.

THURMAN, J.

This is an action in equity to vacate and set aside a judgment of the district court of Box Elder county adjudging plaintiff guilty of bastardy and condemning him to pay certain sums of money for the support of the illegitimate child of one Cora Ray. The proceeding was had under the provisions of title 9, Compiled Laws of Utah, 1917.

Plaintiff alleges, in effect, that his conviction of bastardy and the judgment thereon were procured by the perjured testimony of the said Cora Ray and her mother, Alice Ray, who conspired and confederated together to suppress and conceal the fact that Cora had intimately associated, during the period of gestation, with one Ethan Demott under circumstances that permitted of sexual intercourse between them. In fact, plaintiff alleges on his information and belief that they did have sexual intercourse, and that Demott is the father of the child.

The complaint is voluminous, consisting of specific allegations setting out the grievance of which plaintiff complains, together with all the evidence upon which the judgment in the bastardy case was founded. It is impracticable to state even the substance of the complaint within reasonable limits. Sufficient will appear, however, from the following statement to indicate the nature of the case and the grounds upon which plaintiff seeks relief:

Cora Ray was unmarried, 21 years of age, and resided in South Weber, Weber county, Utah. She first met plaintiff in Bothwell, Box Elder county, at a dance, on December 26, 1921. She was introduced to him and danced with him two or three times. She was with him again on two or three occasions before the first of January, 1922. On the evening of that day she went with plaintiff to Tremonton to get plaintiff's sister. They rode in an automobile, and on returning stopped in front of the house where Cora's sister lived and where Cora was visiting. The night was stormy, and they all remained in the car awhile sitting together on the front seat. Plaintiff's sister then went back to the rear

seat, and, according to Cora's testimony, went to sleep, leaving plaintiff and Cora on the front seat. In this situation, Cora testified, they had sexual intercourse. Just how it was accomplished can be imagined as well as stated, and, perhaps, with greater propriety. Cora further testified it was her first experience of that kind with any man. She also testified she was with plaintiff several times after that and that he always conducted himself as a gentleman. The act was never repeated, nor did he make any improper advances. On being interrogated as to whether she had been out with other boys within three weeks prior to January 1, 1922, she answered, "I was only with one boy." She gave his name as Fife, and said she never went out with him after December, 1921, and never had sexual relations with him at any time.

Alice Ray, Cora's mother, testified that Cora never went out with any boy but Fife, and only once or twice with him.

The plaintiff's testimony in the bastardy proceedings was strong and positive that he never had sexual relations with Cora on the occasion referred to, or at any other time; that his sister was awake during the entire time when they were in the automobile and sat right behind him, within less than two feet. His sister testified to the same effect, and said that no such performance as related by Cora was had.

The child in question was born September 23, 1922.

The crux of plaintiff's grievance is that the above testimony of Cora and her mother, that Cora never went out with any other boy but Fife prior to January 1, 1922, was willfully false, and was given as the result of a conspiracy between them to mislead the court, the district attorney, and the plaintiff who was defendant in the bastardy case.

To establish his contention at the trial of the instant case, witnesses for plaintiff were sworn and testified as follows:

Emma Beesly, who was a cousin of Cora Ray, resided in South Weber near the home of Cora in 1921. She saw Ethan Demott during the summer of that year when he was calling on Cora. She went out with Cora and Demott several times in his automobile. Saw Demott take Cora out several times alone.

Ethan Demott testified that he had known Cora Ray about four years; that he met her in June, 1921; saw her about once or twice a week. He conveyed Cora and her mother to the station at Ogden the day before Christmas. He and Cora went to shows, out riding, and to dances. They were not always alone. He called on her the day before Christmas; did not remember how long he stayed. Up to that time he had been making his visits once or twice a week. He had been out with her alone at night. Had partaken of a meal at her home once or twice. He made her a Christmas present of a pair of slippers. When riding out with her, he sometimes put his arms around her, and kissed her when they were alone. Sometimes he was out with her as late as 11:30. He would kiss her good night when he left her. On being asked if he had sexual intercourse with her, he answered, "No." He was asked if on July 8, 1924, at Salt Lake City, he had not told one M. M. Dahl that he (Demott) had had sexual relations with Cora during the period from June 20 to December, 1921. This was objected to as incompetent, immaterial, hearsay, and an attempt to lay a foundation to impeach plaintiff's own witness. The objection was sustained, and the ruling is assigned as error.

Mrs. Bambro testified that she was a sister of Alice Ray and mother of Emma Beesly; that she lived across the field from Alice Ray; that she knew Demott had taken Cora out, off and on, in the summer, fall, and early winter of 1921.

Le Roy B. Young, district attorney, who prosecuted the bastardy case, testified he took the evidence as it was presented to him. He asked Cora if the Fife boy had been there; that she told him he had, but as witness recalled it it was not within the period of gestation. Witness knew nothing about Demott. Never heard of him at the trial or during the course of investigation.

William J. Lowe, attorney for defendant in the bastardy proceeding, testified he never heard anything about Demott in the course of his investigation. He interrogated Cora and Mrs. Ray, and other witnesses, as to Cora's associations with other boys. They denied she had been out, except as

the record shows. When he was interrogating them, he knew nothing of her association with Demott. He did not go down to South Weber, but relied on the answers of Cora and her mother as to Cora's association with other boys.

The foregoing is a brief summary of the material evidence in the bastardy case and in the case at bar.

Appellant contends that he is entitled to an order of this court vacating the judgment entered against him.

If I had been the trial judge in the bastardy case, and the question was before me on motion for a new trial on the grounds of newly discovered evidence, such as has been presented here, accompanied with a showing of proper diligence, I would have vacated the judgment and granted the plaintiff a new trial. But the well-established rules of equity, in cases of this nature, preclude the exercise of that discretion which might be exercised by a trial judge under the circumstances mentioned.

In order to obtain a decree vacating a judgment formally entered by a court having jurisdiction of the subject-matter and the parties, on the ground of fraud, a court of equity is limited by many rules, more or less inflexible: First, the fraud relied on must be extrinsic, and not fraud which could have been apprehended and met in the trial of the case which resulted in the judgment complained of; second, it should appear to the satisfaction of the equity tribunal that had it not been for the fraud the judgment would not have been rendered; third, the fraud, and the effect thereof, should be made to appear beyond a reasonable doubt; and, fourth, the party seeking the relief must have been free from negligence in the trial of the case in which the judgment was rendered. These rules have been recognized and enforced in most jurisdictions of the country ex necessitate to prevent interminable litigation. To these rules may be added another, recognized and enforced in most jurisdictions, including our own, that mere perjury, committed in the trial of the case in which the judgment was rendered, is not such fraud as will authorize the court to vacate the judg-

ment. *Cantwell* v. *Thatcher Brothers Banking Co.*, 47 Utah, 150, 151 P. 986.

The existence of the rule last referred to appears to be recognized by appellant. To obviate its effect, it is contended that Cora Ray and her mother entered into a conspiracy and confederated together to commit perjury, conceal the truth, and thus defeat the ends of justice.

The alleged conspiracy between Cora and her mother is relied on as extrinsic fraud. The only evidence of conspiracy is the fact that they testified to the same effect. That is a circumstance to be considered, especially as the witnesses were separated by order of the court. But is the circumstance conclusive? Does it produce conviction beyond a reasonable doubt?

I am strongly impressed with the contention of appellant that there must have been a collusive understanding between Cora and her mother to avoid mentioning the name of Demott, because the uncontradicted evidence in the trial of this case in the court below discloses the fact that Demott was a frequent visitor at the home of Cora Ray and her mother from June, 1921, until about Christmas of the same year, and that his sole purpose was to call upon Cora. He took meals there; he took Cora out riding; he called there about once or twice a week during the whole period; he put his arms around her and kissed her when they were alone; he made her a Christmas present, and conveyed her and her mother to Ogden the day before Christmas; he was there sufficiently late in the season to bring himself within the period between conception and delivery of the child. These facts are not denied by Cora or her mother. To conclude that there was not a collusive understanding between Cora and her mother to not mention the name of Demott in the trial of the case would be to stultify my conscience and falsify my judgment.

Furthermore, if the truth had been told in the bastardy case, as it was afterwards told in the instant case, it is possible the plaintiff would not have been convicted, notwithstanding the positive testimony of Cora that he          3

was the guilty party. But is that sufficient to authorize vacating the judgment? It must satisfactorily appear
that but for the fraud the judgment must have been otherwise; not that it might have been otherwise.

In *Dringer* v. *Erie Ry. Co.*, 42 N. J. Eq. 573, 8 A. 811, the
rule is enunciated with such strength and perspicuity that
I am tempted to quote from the opinion at considerable
length. At page 581, 8 A. 815, the Vice Chancellor said:

"Now, while I think it would be difficult to imagine anything
more detestable in the way of fraudulent conduct or more dangerous to the safe administration of justice than the fraud here
charged, still I also think it must be admitted that this court is
powerless to do anything by way of correction, punishment or redress of such fraud, in this case, unless it is clearly shown that
the decree assailed is the product of such fraud, and has no other
foundation. A court of equity may unquestionably annul a judgment or decree which has been obtained by fraud, but, in order to
justify such an exercise of power, it must be made clearly to appear that the judgment or decree has no other foundation than
fraud; in other words, it must be made to appear that if there had
been no fraud, there would have been no judgment or decree. An
attempt to exercise a wider or more liberal jurisdiction, in cases
of this class, would, it will be perceived, necessarily enlarge the
jurisdiction of courts of equity so as to make them, practically,
courts for the review of the judicial acts of other tribunals, and
not tribunals with just sufficient power to redress frauds by undoing what fraud has done. * * * A simple statement of the
ground upon which jurisdiction in such cases rests shows that,
unless the decree assailed is shown to be the sole and direct product
of the fraud charged, this court has no authority whatever either
to annul or change it, for its jurisdiction is unalterably limited to
the simply undoing of what fraud has done. It is, therefore, clear
that, if this decree has any other foundation than the fraud here
charged, this court, even if convinced that the decree is unjust
according to the real right of the case, cannot disturb it."

The above excerpt is quoted with approval in *Holton* v.
*Davis*, 108 F. at page 150, 47 C. C. A. 246, where many additional cases are cited. *Ross* v. *Wood*, 70 N. Y. 8, 12; *In re
Griffith's Estate*, 84 Cal. 108-112, 23 P. 528, 24 P. 381; *Pico*
v. *Cohn*, 91 Cal. 29, 133, 25 P. 970, 27 P. 537, 13 L. R. A.
336, 25 Am. St. Rep. 159; *Smith* v. *Allen*, 63 Ill. 474; also, 3
Pom. Eq. Jur. §§ 1362-1364; 1 Story Eq. Jur. § 252a; 3

Ency. Pl. & Pr. 629-630, and authorities there cited.

In most cases where courts of equity have set aside judgments on the ground of fraud, it was made to appear to the satisfaction of the court that had it not been for the fraud the judgment sought to be vacated would not have been rendered. In the instant case, the most that can be said in favor of plaintiff's contention is that if the alleged fraud had not been practiced, the jury might not have found him guilty. This, however, is far from saying that the fraud relied on was the only ground for his conviction and the only foundation for the judgment against him. Independent of the fraud complained of, Cora Ray testified that plaintiff was the father of her child. That alone was substantial evidence. This court heretofore passed upon that question on appeal from the judgment. We were compelled to hold that the evidence was sufficient to sustain the verdict. So that, in effect, it has already been judicially determined by this court that there was a foundation for the judgment, entirely independent of the fraud now complained of by plaintiff. This rule appears harsh when applied to cases of palpable fraud and undoubted hardship. But it would be neither wise nor expedient to depart from a salutary rule, of almost universal application, in order to afford relief in a particular case, and thereby establish a precedent for practically endless litigation. A careful examination of the reported cases of this nature discloses the fact that the principal foundation for the rule in question is to avoid the consequences to which we have referred.

But there is another reason why the court cannot grant the relief prayed for in this case without violating a rule maintained with practical unanimity by the equity tribunals of the country. As before stated, the party seeking the relief must have been free from negligence in the proceeding which terminated in the judgment.

There were three different hearings in the bastardy case before the lower courts prior to the institution of the present action; once before the examining magistrate and twice in the district court. Cora Ray, in these hearings, was exam-

ined as to her association with other men.    Bothwell, where
plaintiff resides, is in Box Elder county, and South Weber,
where Cora Ray resides, is in Weber county.

Without having the exact distance between the two towns,
the court will take judicial notice that the distance is not
great.    It appears that at no time did either plaintiff or his
attorney who defended him at these hearings ever go to
South Weber, or employ any one to go there for the purpose
of finding out what man or boy, if any, was keeping
company with Cora Ray.    Before the preliminary ex-    5, 6
amination, plaintiff knew that Cora was pregnant.
He knew she laid her unfortunate condition at his door.    If
he was innocent, and for the present purpose, we will assume
he was, he knew that some other man was guilty.    In a small
country town like South Weber, where everybody is ac-
quainted with his neighbor and where everybody, generally,
knows everybody else's business, it would have been an easy
matter to have learned who, if anybody, was keeping com-
pany with Cora Ray during the latter part of 1921.    In view
of the evidence now before the court, it would have entailed
but little burden to have learned that Ethan Demott was
calling upon Cora regularly once or twice a week from June
until the latter part of December of that year.    At the pre-
liminary hearing before the magistrate, and even before that
time, plaintiff knew, if he was innocent, that he was being
charged with a grave and serious offense for which some
man, other than himself, was responsible.    Should he not
have made some effort to find the man, or, at least, find out
who he was?    Should not he, or some one for him, have made
the effort by way of reasonable preparation?    It does not
appear that his present attorney, in preparing the instant
case, had any difficulty in getting the truth from Mrs.
Brambo, the aunt of Cora Ray, or from Emma Beesly, the
cousin of Cora, both of whom lived in South Weber.    Why,
under all the circumstances, was not the information which
was laid before the court in the case at bar not obtained and
laid before the court in the bastardy case?    The only answer
to these questions disclosed by the record is that plaintiff and

his attorney relied solely on the testimony of Cora and her mother, and assumed that they were telling the truth. Plaintiff had no reason to suspect that Fife was the guilty party, and, apparently, did not suspect him. Furthermore, from the first moment that Cora charged plaintiff with being responsible for her condition, which was prior to the preliminary examination, plaintiff knew, if he was not guilty, that Cora was a consummate liar and wholly unworthy of belief.

In these circumstances, it can hardly be contended that he was misled by her testimony concerning her relations with other men. That evidence of such association is material and competent in a case of this kind is established by authorities cited by appellant and not controverted          7 by respondent. *Burris* v. *Court,* 34 Neb. 187, 51 N. W. 745; *State* v. *Gereke,* 74 Kan. 196, 86 P. 160, 87 P. 759; *Kelly* v. *State,* 133 Ala. 195, 32 So. 56, 91 Am. St. Rep. 25; *Humphrey* v. *State,* 78 Wis. 569, 47 N. W. 836; *Fillipone* v. *United States* (App. D. C.) 2 F. (2d) 928. Besides this, Cora's association with other men during the period of gestation was made an issue in the case and evidence admitted thereon. There may be cases in which a party has the right to rely upon the testimony furnished by his adversary as an excuse for his failure to make reasonable investigation preparatory to a trial of the case, but I am of opinion that in the instant case plaintiff's negligence was inexcusable.

We know of no conflict among the authorities upon the proposition that relief will not be granted in an action of this kind if it appears that the party seeking the relief has been guilty of negligence in the proceeding which terminated in the judgment complained of. In a very early case in the Supreme Court of the United States, *Marine Insurance Company* v. *Hodgson,* 7 Cranch, 332, 3 L. Ed. 362, Mr. Chief Justice Marshall stated the rule as follows:

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party

could not have availed himself in a court of law; or, of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

In 10 R. C. L. at page 574, it is said:

"The new proof that will justify a bill of review must be such as has come to light after the decree was made, and such as could not have been discovered in the exercise of reasonable diligence within time to permit of its being used at the original hearing."

In 21 C. J. at page 779, the author says:

"Requisites of right to relief on the grounds of fraud are the same as on any original bill to impeach a decree. Generally fraud and injury must coexist. The decree must have resulted from the fraud. Plaintiff must have a good claim or defense which he has been prevented from presenting in the original suit. Plaintiff's plight must not be the result of his own negligence, and the facts constituting the fraud must be newly discovered after the decree."

The rule as stated above has not been controverted by any well-considered case. In fact, many of the cases cited by appellant on the various questions involved recognize the rule, and the only question is: Do the circumstances above enumerated bring this case within the rule? The trial court found that plaintiff might have ascertained the facts if he had made an effort, and I am of opinion the finding is correct.

The numerous cases referred to by appellant have been cited promiscuously and without reference to any particular point. They all relate, however, to questions involved in cases of this nature. For that reason they may on some occasion be of interest to the reader. *Kennedy* v. *Burbidge*, 54 Utah, 497, 183 P. 325, 5 A. L. R. 1682; *Cantwell* v. *Thatcher Brothers*, 47 Utah, 150, 151 P. 986; *Graves* v. *Graves*, 132 Iowa 199, 109 N. W. 707, 10 L. R. A. (N. S.) 216, 10 Ann. Cas. 1104; *Peterson* v. *Blanton*, 76 Ala. 265; *Ross* v. *Wood*, 70 N. Y. 8; *Burgess* v. *Lovengood*, 55 N. C. 457; *Vance* v. *Burbank*, 101 U. S. 514, 25 L. Ed. 929; *Morrell* v. *Kimball*, 1 Greenl. (Me.) 322; *Holton* v. *Davis*, 108 F. 138, 47 C. C. A. 246; *Davidson* v. *Ream*, 97 Misc. Rep. 89, 161 N. Y. S. 73; *Dunham* v. *Dunham*, 162 Ill. 589, 44 N. E. 841, 35 L. R. A. 70; *Marshall* v. *Holmes*, 141 U. S. 589, 12 S. Ct. 62, 35 L. R.

A. 70; *Marshall* v. *Holmes,* 141 U. S. 589, 12 S. Ct.. 62, 35 L. Ed. 870; *Scharf* v. *People,* 34 Ill. App. 400; *Earle* v. *Earle,* 91 Ind. 27; *Holmes* v. *Holmes,* 63 Me. 420; *Helms* v. *Helms,* 24 Misc. Rep. 125, 52 N. Y. S. 734; *Woodruff* v. *Gorman,* 179 Ind. 1, 100 N. E. 296; *Rittenberry* v. *Wharton,* 176 Ala. 390, 58 So. 293; *Tebbetts* v. *Tilton,* 31 N. H. 287; *Wood* v. *Wood,* 136 Iowa, 128, 113 N. W. 492, 12 L. R. A. (N. S.) 891, 25 Am. St. Rep. 223.

Appellant places some reliance upon the case of *Kennedy* v. *Burbidge,* supra, a Utah case. It is not necessary to occupy space in a lengthy statement of the case. It was an action for malicious prosecution. The complaint of plaintiff stated facts showing that a judgment rendered against him in the city court of Salt Lake City had no substantial foundation; that he appealed therefrom to the district court, where the action against him was dismissed on motion of the city attorney; that the prosecution was malicious and without probable cause. The defendant demurred to the complaint, and the trial court sustained the demurrer. Judgment was entered for defendant, and plaintiff appealed. This court held that the complaint stated a cause of action, reversed the judgment, and remanded the cause for further proceedings. For further information the reader is referred to the case itself, which states the position of the court with reasonable clearness and appears to be well supported by authority. The case has no application to the case at bar, which, as we have shown, is controlled entirely by rules specially applicable to proceedings in equity to vacate and set aside a judgment or decree.

In view of the conclusions reached, we are of opinion it is not necessary to consider, in detail, the remaining errors assigned. Such errors, if any there be, are not sufficient to authorize a reversal of the judgment.

For the reasons stated, the judgment of the trial court is affirmed, at appellant's cost.

GIDEON, C. J., and FRICK and CHERRY, JJ., concur.

STRAUP, J.   I concur in the result.   To justify equity in setting aside a judgment for fraud, the facts constituting the fraud and that the judgment was the product of it should be clearly shown, but I think need not be shown beyond a reasonable doubt.   If they are shown to the satisfaction of the court, I think that is all that is required.

The chief ground to vacate the judgment is the alleged false or perjured testimony of the prosecutrix and of her mother in the bastardy case, to the effect that the plaintiff was the father of the child and that the prosecutrix had kept company with no male person except Fife, whom no one accused of any improper relations.   The opinion points out wherein it is claimed such testimony was wilfully false.

I think the judgment of the court below should be affirmed on the points:   (1) That as a general rule a bill to vacate a decree or judgment will not lie on alleged grounds that the judgment was obtained by perjury or subornation of perjury; and (2) because it is not shown that there was in law any suppression of evidence, nor are there any facts alleged or proved that the prosecutrix or any one on her behalf, or the state, in the bastardy case was under legal obligation to reveal or furnish testimony or evidence for the use of the plaintiff, or used any artifice by which evidence was concealed from him or by which he was prevented from discovering or presenting it in the original action.   The first does not avail plaintiff in equity, and the second was not established nor is it claimed.

The prosecutrix in the original action testified no one had lain with her but the plaintiff.   After judgment the plaintiff discovered another who had visited and caressed her, but who had not lain with her—at least such other so testified, and no one testified that he had.   Thus, we have a situation where, in the original action, the prosecutrix testified the plaintiff, under most peculiar circumstances, committed the offense and where he denied it, and where, after judgment, it was found that another had more favorable access than had the plaintiff, and while such other caressed the prosecutrix, yet there is no satisfactory evidence that he committed the of-

fense. At least, to find that he had, the court was required to indulge in more or less conjecture. The requirements of equity as to the character and degree of evidence—clear and convincing, or to the satisfaction of the court—have thus not been met.

I therefore concur in the holding that no facts of equitable cognizance are shown, and on that ground concur in the affirmance of the judgment.

In such view the question of diligence or lack of diligence in discovering what was claimed was found and presented is of no moment. However, I do not see any want of diligence and do not think plaintiff's action should be defeated on that ground. If otherwise entitled to prevail, plaintiff, of course, could not prevail if the judgment which he seeks to vacate was due in whole or in part to his own negligence or lack of diligence in discovering and presenting in the original case what is now presented by him. But I do not see that plaintiff or his counsel was guilty of negligence in not discovering that another had visited the prosecutrix and kept company with her and fondled or caressed her. Plaintiff's defense in the bastardy case was not guilty. The burden was on the prosecution to show his guilt. To show his innocence he was not required to show who was the guilty person. The duty was cast on the prosecution to show that the plaintiff had committed the offense and not on him to show that another had committed it. The suggestion that because present counsel of plaintiff had no difficulty in obtaining and presenting the discovered evidence, therefore the plaintiff and his counsel in the bastardy case with due diligence could have obtained and presented the same evidence, is, I think, chiefly argument. It is common knowledge that one person may obtain information where another with equal diligence may fail. It also is common knowledge that some persons after trial are more prone to give information than before trial, especially interested witnesses to the adverse party. In considering whether one before judgment could as readily have obtained certain testimony as did another after judgment so many variant equations and elements enter into

the matter that no safe conclusion can be deduced from the fact that the one obtained it and the other did not. There is no claim made that the plaintiff or his counsel before judgment in the bastardy case had any knowledge whatever that such other, or that any one, had visited the prosecutrix and kept company with her, or had caressed or fondled her. Plaintiff knowing that the prosecutrix was with child, and he asserting his innocence, as he did, of course, on his theory, knew that another and not himself had committed the offense; but that is only restating the proposition that if the plaintiff had not committed the offense he was required to show who had. I thus do not concur in the conclusion that the plaintiff or his counsel was guilty of negligence in not discovering the evidence before judgment in the original action.