## LOGAN CITY v. UTAH POWER & LIGHT CO.

No. 5135.   Decided December 30, 1932.   (16 P. [2d] 1097.)

See opinion on rehearing, 86 U. 354; 44 P. (2d) 698.

*Leon Fonnesbeck,* of Logan, for appellant.

*Geo. R. Corey* and *A. E. Bowen,* both of Salt Lake City, for respondent.

ELIAS HANSEN, J.

In the court below defendant demurred to plaintiff's complaint upon four grounds, viz.: (1) That the complaint shows on its face that all of the matters relied upon by the plaintiff for its cause of action have been determined and adjudicated in two former suits; (2) that the complaint shows on its face that there is a defect of parties defendant in that plaintiff seeks to re-examine matters in which the rights of numerous other parties are involved; (3) that the complaint fails to state sufficient facts to constitute a cause of action; and (4) that several causes of action have been improperly united. The demurrer was sustained on the first and third grounds stated therein. Plaintiff refused to further plead, whereupon the suit was dismissed. Plaintiff appeals. It assigns as errors the order sustaining the demurrer and the judgment dismissing the suit. The complaint together with the exhibits attached thereto and made a part thereof are unusually voluminous, covering as they do slightly more than 166 pages of the printed abstract. A brief summary of the allegations of the complaint will be sufficient to serve to indicate the questions which are presented for determination on this appeal. It is in substance averred in the complaint:

That plaintiff and defendant each own and operate a hydroelectric power plant in Logan Canyon, Cache county, Utah. The water of Logan river is used to operate the plants. The electricity generated by plaintiff's plant is used by the inhabitants of plaintiff city for lighting, heating, and power purposes. Plaintiff's plant is above the plant owned by the defendant. In the year 1868, Crowther Bros. constructed a dam, reservoir, millrace, and sawmill on Logan river about seven miles east of Logan City in Logan Canyon, Cache county, Utah. The dam so constructed was placed across Logan river, thus creating, above the dam, a reservoir with a storage capacity of about 28 acre feet. The sawmill was about 600 feet below the dam and reservoir. The millrace extended from the reservoir to the sawmill. From

1868 to 1902 Crowther Bros. operated their sawmill with water power from Logan river. The water used for that purpose was diverted from the reservoir through the mill-race to the sawmill. In 1902 Logan City acquired by purchase the mill site, the dam, the reservoir, the millrace, and the right theretofore owned by Crowther Bros. to the use of the water of Logan river for power purposes. In 1902 and 1903 Logan City acquired by appropriation an additional water right in Logan river for power purposes. In 1903 the Logan Power & Light Company applied to the Department of the Interior of the United States government for a reservoir and power plant site on Logan river near the site purchased by Logan City from Crowther Bros. Logan City protested the granting of the power site applied for by the power company because the power site so applied for conflicted with the power site desired and selected by the city for the construction of its municipal power plant. About a month after Logan City filed its protest against granting the application of the Logan Power Company, an agreement was entered into between the city and the power company whereby they agreed upon the extent and location of the respective reservoirs and power sites which they would request be granted to each of them by the Department of the Interior. The preamble of the agreement contains a provision that a proposed reservoir be built by the Logan Power Company that "will be of mutual benefit to the city and the power company and will tend to equalize the flow of Logan River farther down the stream." Plaintiff claims that by the language just quoted Logan City and the Logan Power Company intended to and did agree that the reservoir to be constructed on the site which was to be granted to the Logan Power Company should be so constructed and operated as to overcome the fluctuation of the flow of Logan river which would result from the manner in which the power plant of Logan City was to be operated so that all other water users interested in Logan river would receive, at their places of use, a uniform flow.

Permits to construct reservoirs and power sites were granted by the Secretary of the Interior to Logan City and the Logan Power Company according to their agreement. The Logan Power Company conveyed all of its rights in the reservoir site, granted to it by the Department of Interior, to the defendant Utah Power & Light Company. Immediately after plaintiff acquired the right from Crowther Bros., it began the construction of a hydroelectric power plant. The plant was completed and put in operation about May 1, 1904. Plaintiff's power plant has been operated continuously from the date of its construction until the commencement of this suit excepting from August, 1923, to March, 1924, when the dam and power plant were being reconstructed. Since plaintiff's power plant has been in operation, the demand on the plant for electrical energy has been variable, being much greater during the early part of the night than during the early morning. During some seasons of the year the flow of the water in Logan river is so low that the variable demand upon plaintiff's power plant for electrical energy cannot be supplied unless the natural flow of the water in the river is stored in its reservoir above its power plant when the demand for electricity is small, and released from its reservoir when the demand for electricity is great. That since the construction of the power plants of the plaintiff and the defendant, and prior to 1924, the reservoir now owned by the Utah Power & Light Company has been so operated as to equalize the flow of Logan river so that the flow of the river below defendant's power plant is uniform. That since 1924 the Utah Power & Light Company has, for the purpose of injuring the plaintiff, so operated its power plant and reservoir that the fluctuation of the river is no longer equalized by its reservoir. In 1917 the Utah Power & Light Company filed a suit in the district court of Cache county against approximately 350 individuals and corporations, including Logan City. The suit was brought to quiet plaintiff's title and to adjudicate and fix the rights of the various defendants in and to

the waters of Bear river and its tributaries, including Logan river. On October 5, 1921, a stipulation for judgment was executed in the suit brought by the Utah Power & Light Company against Logan city et al. Among those who signed the stipulation on behalf of the defendants, were A. E. Bowen, and A. A. Law. By the terms of the stipulation, the rights of the various parties mentioned in the suit in and to the water of Logan river were agreed upon. It was agreed that Logan City was entitled to receive 10 c. f. s. from Logan river to be used for domestic and municipal purposes within Logan City. No mention was made in the stipulation of any power rights of Logan City. The stipulation fixed the rights of the Utah Power & Light Company to the use of the water of Logan river for power purposes. On February 22, 1922, a decree was made and entered pursuant to the stipulation. In the decree, Logan City was awarded the water rights mentioned in the stipulation, as was also the Utah Power & Light Company. In 1926 the Logan, Hyde Park & Smithfield Canal Company et al. brought a suit against Logan City, in the district court of Cache county, Utah. Plaintiffs in that suit sought, among other things, to enjoin Logan City from causing the natural flow of Logan river to fluctuate. Logan City requested that the Utah Power & Light Company be made a party to that suit. The request was granted, and the city filed a cross-complaint against the power company. Logan City, as one of its defenses to the claim that it should be enjoined from causing the natural flow of Logan river to fluctuate, and as one of its grounds for the relief prayed against the Utah Power & Light Company, set up its claimed power right, which right it alleged included the right to use its reservoir to alternately store and release water so that the variable demand upon its power plant for electrical energy could be supplied. The Utah Power & Light Company, together with some of the other parties to that suit, pleaded that Logan City was estopped from setting up its power rights as a defense or as the basis for any affirmative relief because of

the provisions of the decree entered on February 22, 1922. The trial court held that Logan City was estopped by the decree so pleaded. A decree was accordingly entered enjoining Logan City from causing the natural flow of Logan river to fluctuate. The decree also provides that the rights of Logan City in and to the use of the water of Logan river for power purposes were inferior to the rights of the Utah Power & Light Company, as well as inferior to the rights of the other parties to that suit. Logan City appealed to this court from that decree. The decree was affirmed. *Logan, Hyde Park & Smithfield Canal Co. et al.* v. *Logan City,* 72 Utah 221, 269 P. 776.

The suit first above mentioned is referred to in the pleading and briefs of counsel as case No. 1772. The other suit is referred to as case No. 3055. Hereafter, in this opinion, when we have occasion to refer to those cases, we shall do so by the numbers given them in the pleadings and briefs of counsel. It is the decrees entered in cases numbered 1772 and 3055 that Logan City seeks to set aside in this suit. The decree entered in case No. 1772 is attacked by Logan City upon the following grounds: (1) That a demurrer was filed by Logan City in that case, but such demurrer was not disposed of at the time the decree in that case was entered; (2) that A. A. Law was the attorney for Logan City at the time the complaint in case No. 1772 was filed but at the time the stipulation for a decree was signed, and at the time the decree was entered in that case, Mr. Law was the duly elected, qualified, and acting district judge of the First judicial district of the state of Utah, and therefore was precluded from practicing law under the provisions of Comp. Laws Utah 1917, § 1786; (3) that, notwithstanding A. A. Law became disqualified from practicing law when he assumed the duties of district judge, the other parties to the suit in case No. 1772 did not serve notice on Logan City to appoint another attorney as required by Comp. Laws Utah 1917, §§ 329 and 330; (4) that A. E. Bowen, who also signed the stipulation for the decree

in that case, was not acting as attorney for Logan City with respect to its power and storage rights; (5) that neither A. A. Law nor A. E. Bowen had authority from Logan City to sign a stipulation for the decree in case No. 1772 with respect to the power and storage rights of Logan City, that the Utah Power & Light Company and the other parties to that suit knew that neither Mr. Bowen nor Mr. Law had any such authority, and that the decree was entered without the knowledge or consent of Logan City; (6) that it was not intended by the complaint filed in case No. 1772 that the power and storage rights of Logan City were to be adjudicated, and that the decree founded upon the complaint was entered by a mutual mistake of the court and all the parties to that suit; (7) that the Utah Power & Light Company and its attorneys represented that it was not intended in case No. 1772 that the power and storage rights of Logan City would be adjudicated or interfered with; (8) that the Utah Power & Light Company by its agents and attorneys falsely and fraudulently presented to the court for its signature the decree in case No. 1772 and falsely and fraudulently represented to the court that Logan City had consented to the entry of the decree in that case; (9) that Logan City did not know that its storage and power rights in Logan river had been adjudicated in case No. 1772 until so informed on October 2, 1926, when the decree was entered in case No. 3055.

The grounds upon which Logan City seeks to set aside the decree in case No. 3055 are: (1) That Logan City was not permitted to prove its storage and power rights in Logan river, in case No. 3055, because the court held that such rights were adjudicated in case No. 1772; (2) that the decree entered in case No. 3055 is founded solely upon the decree entered in case No. 1772, and therefore, when the decree in case No. 1772 is vacated the decree in case No. 3055 is without any foundation to support it, and therefore must likewise be set aside; (3) that, if Logan City is prevented from using its reservoir for alternately

storing and releasing the water of Logan river, its power plant cannot be operated to its capacity, and the value of the power plant will be depreciated in the sum of $250,000. No facts are alleged in the complaint which tend to show, and no claim is made in this case, that Logan City acquired any right to use the water of Logan river after the decree was entered in case No. 1772.

Among the exhibits which are attached to and made a part of the complaint herein are the pleadings and the decree entered in case No. 3055. Those exhibits show that the plaintiff and the cross-defendant Utah Power & Light Company sought, in case No. 3055, to enjoin Logan City from so operating its power plant as to cause the natural flow of Logan river to fluctuate; that Logan City in that case claimed the right to alternately store and release the water of Logan river; that the plaintiffs and Utah Power & Light Company set up the decree entered in case No. 1772 as a bar to the claim of the city to alternately store and release the water of Logan river; and that, as to such issue, the trial court found against the city and entered a judgment accordingly, which judgment on appeal was affirmed by this court.

In the instant case the city again seeks to litigate its claimed right to alternately store and release the water of Logan river. It again contends that its power rights were not litigated in case No. 1772. It also contends that it is not bound by the decree entered in case No. 1772 because of the alleged irregularities in the proceedings had in that case as heretofore indicated in this opinion. It is further urged on behalf of the city that it should not be bound by the decree entered in case No. 3055 because: (1) In that case the trial court and this court were in error in holding that the decree entered in case No. 1772 fixed and determined the power rights of Logan City in and to the water of Logan river; and because (2) no issue was or could have been raised by the city in case No. 3055 as to the validity of the decree entered in case No. 1772. At the outset of our discussion it is clear that, before the plaintiff is entitled

to relitigate its claimed right to fluctuate the flow of Logan river, it must allege and prove facts which entitled it to have vacated the decree entered in case No. 3055. Even if it be held that the decree entered in case No. 1772 is vulnerable to attack because of the alleged irregularities connected with the proceedings had in that case, the plaintiff is not entitled to prevail in this proceeding unless it also alleges and proves such facts as entitle it to have vacated the decree entered in case No. 3055. The law is well settled that a party litigant is not entitled, in a proceeding such as this, to relitigate a question which has been once litigated and adjudicated where the claimed right to relitigate is founded solely upon the ground that the court was in error in reaching its conclusions in the former litigation. Freeman on Judgments (2d Ed.) vol. 1, § 221, p. 434, and cases there cited. The interests of society demand that there shall be a termination to every controversy. The contention was made on behalf of the city in case No. 3005 in the trial court and in this court that the decree entered in case No. 1772, when properly construed, did not adjudicate the power rights of Logan City. The city failed in such contention, and that question was forever set at rest by the decree entered in the latter case.

In the instant case the city, however, does not confine its contention to the question of the construction that should be given to the decree entered in case No. 1772, but it also questions the validity of that decree. The position of the city is not entirely clear as to whether it claims the decree entered in case No. 1772 is, because of the irregularities complained of, void or voidable. We are of the opinion the city in this proceeding is barred from asserting that the decree in case No. 1772 is either void or voidable. In case No. 3055 the trial court and this court in effect held that the decree entered in case No. 1772 was valid and binding upon the city and that in alternately storing and releasing the water of Logan river the city interferred with the superior rights of the other persons and corporations who

were parties to the suit in case No. 1772. The mere fact that the city, in case No. 3055, did not see fit to attack the validity of the decree entered in case No. 1772, is no legal justification for permitting the city in this proceeding to attack the validity of that decree. So far as appears from the complaint, the city was possessed of full knowledge of the alleged irregularities connected with the proceedings had in case No. 1772 at the time the proceedings were had in case No. 3055. Nor does the complaint in the instant case contain any allegations which show, or tend to show, that there were any irregularities in connection with the proceedings had in case No. 3055. In the latter case the city was represented by able counsel at every stage of the proceeding. There is no pretense of any want of opportunity on the part of the city to defend in the latter case either in the trial court or in this court. In the absence of statutory provisions prescribing the grounds upon which a judgment may be vacated, it is quite generally held that a judgment may be vacated for fraud only when such fraud is extrinsic or collateral to the matter tried in the cause in which the judgment sought to be vacated is rendered. A leading case supporting such rule is that of *United States* v. *Throckmorton,* 98 U. S. 61, 65, 25 L. Ed. 93. It is there said that:

"There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy; namely, interest rei publicae, ut sit finis litium, and nemo debet bis vexari pro una et eadam causa.

"If the court has been mistaken in the law, there is a remedy by writ of error. If the jury has been mistaken in the facts, the remedy is by motion for new trial. If there has been evidence discovered since the trial, a motion for a new trial will give appropriate relief. But all these are parts of the same proceeding, relief is given in the same suit, and the party is not vexed by another suit for the same matter. So in a suit in chancery, on proper showing a rehearing is granted. If the injury complained of is an erroneous decision, an appeal to a higher court gives opportunity to correct the error. If new evidence is discovered after the decree has become final, a bill of review on that ground may be filed within the rules prescribed by

law on that subject. Here, again, these proceedings are all part of the same suit, and the rule framed for the repose of society is not violated.

"But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or wtihout authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,— these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. See Wells, Res Adjudicata, Sect. 499; *Pearce* v. *Olney*, 20 Conn. 544; *Wierich* v. *De Zoya*, 7 Ill. [2 Gilman] 385; *Kent* v. *Richards*, 3 Md. Ch. 392; *Smith* v. *Lowry*, 1 Johns, Ch. (N. Y.) 320; *De Louis et al.* v. *Meek et al.*, 2 Iowa [G. Greene], 55 [50 Am. Dec. 491].

"In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practised directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court."

There is no allegation in the complaint in this case of any facts which constitute what is known as extrinsic fraud; that is, fraud in the cause wherein the decree was procured in case No. 3055. Nor does the complaint contain any allegations of facts which entitle the city to relief from the decree entered in case No. 3055 on the ground that the decree in that case was entered by mistake, inadvertence, surprise, or excusable neglect as provided in Comp. Laws Utah 1917, § 6619. Moreover, the provisions of the statute just cited require that an application, to relive a party from a judgment on the grounds therein mentioned, must be made within a reasonable time not exceeding six months after the adjournment of the term in which the judgment was

rendered. No application was made to amend or vacate the decree in case No. 3055 within the time fixed by the statute. The sole basis upon which the city seeks to vacate the decree entered in case No. 3055 is that during the trial of that case the decree entered in case No. 1772 was received in evidence, and, when so received, was given an improper construction. The rule announced in the *Throckmorton Case*, supra, has been somewhat relaxed in a number of jurisdictions, but no case has been called to our attention, and we have been unable to find a case, where the rule has been so qualified as to grant relief upon a state of facts such as are alleged in the complaint in this case.

It is well settled that it is the duty of a party to interpose such defense as it may have to an action brought against it, and if it fails to do so, the resulting judgment is conclusive against it as to all matters of defense which were or might have been interposed. And likewise a party to a judgment is not entitled to have it vacated merely because of the existence of certain matters of defense of which it fails to avail itself on the trial. Freeman on Judgments (2d Ed.) vol. 2, § 1774, p. 1646, and cases there cited. It is urged on behalf of the city that the defense of the invalidity of the decree entered in case No. 1772 was not available to it in case No. 3055. Such contention cannot be successfully maintained. The proceedings had in both case No. 1772 and case No. 3055 were suits in equity. The parties to both suits were the same. Both suits were brought and prosecuted to judgment in the same court. The legal effect of the decree entered in case No. 1772 was one of the principal questions in issue in case No. 3055. The authorities uniformly agree that a void judgment or decree is vulnerable to attack both directly and collaterally. If, therefore, the city claims that the decree entered in case No. 1772 was and is void, such defense was clearly available to it in case No. 3055. The city, in its reply brief, seems to take the position that the irregularities complained of in connection with the proceedings had in case No. 1772 rendered the de-

cree entered in that case merely voidable, and as such subject to direct but not to collateral attack, and further that the city could not, in case No. 3055, have made a direct attack upon the decree entered in case No. 1772; that, because the defense of the infirmities of the decree entered in case No. 1772 was not available to the city in case No. 3055, the city should by this proceeding be permitted to attack the validity of the decree entered in case No. 1772, and, if successful, be relieved from the legal effect of both decrees. We have a statute, section 6579, which provides that:

"The defendant may set forth by answer as many defenses and counterclaims, legal or equitable, or both, as he may have."

The mere fact that a party occupies the position of a defendant in a proceeding does not necessarily preclude it from making a direct attack upon a judgment. In Freeman on Judgments (2d Ed.) vol. 1, § 308, p. 616, the law is thus stated:

"To constitute these attempts in equity to overthrow the judgment direct attacks, they need not necessarily be made in the bill or by the party instituting the suit. Though the essential allegations in such suits seeking to set aside or annul judgments are usually contained in the bill of complaint, yet the statutes may authorize a defendant in an action at law who is entitled to relief arising out of facts requiring the interposition of a court of equity and material to his defense, to set such matter up by answer and equitable defenses to the new matter may be asserted by reply. In such cases the defendant may set up grounds entitling him to equitable relief from a judgment relied on or pleaded by the other party. He thereby converts himself, so to speak, into a complainant and has the same right to relief as if he had been the first to move in the case, provided of course he brings in necessary parties. Attacks thus made upon judgments by seeking their vacation or annulment on equitable grounds have been considered direct even though made by averments in the answer, or cross-bill or reply."

A number of cases are cited in the footnote which support the text. It should be noted in passing that in case No. 3055 the city filed a cross-complaint against the Utah Power &

Light Company, the sole defendant in this proceeding. Under our practice the attack which the city here seeks to make upon the decree entered in case No. 1772 was available to it in case No. 3055. The city having failed to avail itself of such defense is now precluded from attacking the decree entered in case No. 3055 upon the ground of the irregularities complained of in the proceedings had in case No. 1772. Even though it be conceded that the irregularities complained of in connection with the proceedings had in case No. 1772 were not available to the city as a defense in case No. 3055, it by no means follows that the city may in this suit be heard to complain of such irregularities. The relief which the city here seeks against the decree entered in case No. 1772 was available to it at the time and long before the suit was begun in case No. 3055. The city did not choose to bring an independent suit to set aside the decree in case No. 1772, but contented itself with seeking to be relieved from the effects of that decree on the ground that its power rights were not affected thereby. Having failed in such contention, it may not now be given another opportunity to escape the effects of the decree in case No. 1772 by its claim that the decree in case No. 1772 was and is invalid. This is especially so because of the fact that in case No. 3055 it was held that the former decree was binding upon the city. To permit the city to again question the effect of the decree entered in case No. 1772 would be to disregard the well-established rules affecting the finality of judgments. The fact that the officers of Logan City misconceived the legal effect of the decree entered in case No. 1772 does not affect the finality of the decree entered in that case. Nor may the city be heard to say that it did not know that the decree in case No. 1772 affected its power rights until so informed by the court where it entered the decree in case No. 3055. In case No. 3055 the other parties to that suit pleaded the decree entered in case No. 1772 as a bar to the city's claimed right to fluctuate the water of Logan river. When that suit was begun, the city knew that

the claim was being made that it was without any right to so operate its power plant as to cause the natural flow of Logan river to fluctuate. The city, however, made no effort by an independent suit or otherwise to question the validity of the decree entered in case 1772 until this proceeding was commenced.

While the question is not discussed in the briefs of counsel, we are also of the opinion that the demurrer to the complaint in this case, on the ground that there was a defect as to parties defendant, was well taken. There were numerous other parties in addition to the defendant Utah Power Light Company who acquired rights under the decrees entered in cases Nos. 1772 and 3055. As to them the city was enjoined from so operating its power plant as to cause the natural flow of Logan river to fluctuate. Their interests in the water of Logan river would of necessity be affected by the revocation or modification of the decrees in question. They are necessary parties to a suit to vacate the decrees which affect their rights in the water of Logan river. The demurrer to the complaint in the instant case was properly sustained.

The judgment of dismissal is affirmed. Respondent is awarded its costs.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.