## RICE v. RICE.

No. 7268.   Decided December 21, 1949.   (212 P. 2d 685.)

Rehearing Denied February 6, 1950.

28

See 34 C. J. S., Executors and Administrators, sec. 528. Judgment as affected by extrinsic fraud, see note, 88 A. L. R. 1201. See, also, 31 Am. Jur. 230.

*Shirley P. Jones,* Salt Lake City, for appellant.

*Jesse R. S. Budge,* Salt Lake City, for respondent.

VAN COTT, District Judge.

On the 16th day of April, 1944, David L. Rice executed his last will and testiment wherein he left to the appellant certain property, the will among other things providing:

"III

"I give and bequeath to my son, Austin Rice, the land, approximately 27 acres in Section 31, Township 3 North, Range 1 East, Salt Lake Meridian, Now Occupied By Him, which shall be his full distributive share of my estate and he shall not have any other or additional share or participate in any distribution thereof."

After certain other bequests and devises the remainder of the property was to be distributed to eight other children of the deceased including the respondent.

It appears from the record that between the years 1902 and 1909 the deceased acquired 27.71 acres on the west side of Highway 91 in Davis County, Utah, all with appurtenant water rights. On the east side of the highway and directly across from this tract is a tract containing 2.10 acres acquired in 1902 by the same deed as the tract on the west side of the highway, and, contiguous to the 2.10 acres is a tract of 1.75 acres acquired in 1904 with no appurtenant water right; the land on the east side of the highway amounting to 3.85 acres, and on the west side of the highway 27.71 acres. The west parcel is subject to two rights-of-way, one for the Bamberger Railroad Company, and one for highway purposes. With these two rights-of-way deducted from the 27.71 acres there is left in this piece for private use approximately 25.24 acres.

The record also shows that for many years prior to the death of David L. Rice he used this east piece of land as a barn and corral site and for the housing of farm implements. His use of this piece, however, became infrequent after the year 1937.

To the north and east of all the property mentioned flows Davis Creek in which the deceased had the water rights mentioned. These water rights are unincorporated, and each share represents one hour per week of the use of the entire flow of Davis Creek. From Davis Creek there is a ditch going south to the lands in question, known as the White Ditch. The deceased owned no other lands south of Davis Creek that could be watered from the White Ditch, although he did own considerable land north of Davis Creek, which is supplied through what is known as the North Ditch.

On February 14, 1945, the testator died at Farmington, Davis County, Utah, and thereafter his will was duly ad-

mitted to probate. On the 12th day of December, 1945, the defendant as executrix of said will and one of the heirs thereunder filed her petition for distribution of the estate. The petition so filed and the decree entered pursuant to said petition on the 26th day of December, 1945, decreed to Austin Rice the appellant only the 27.71 acres on the west side of the highway with no water. To the petition Austin filed no objection, although he received notice of hearing, from the decree he took no appeal, and accordingly, the decree became final.

On October 16, 1946, Austin Rice petitioned the Court to amend the decree of distribution to give him the land on the east side of the highway and to include his water rights. This petition is based upon two theories, one that the executrix occupied a fiduciary relationship to him and purposely omitted his water rights to the decreed land and also purposely left out of the piece across the street on the east of the highway upon which the corral and barns are located. His second theory is that the executrix made misrepresentation to the Probate Court and to him whereby he has been deprived of his day in Court in reference to his rights to the water and the land mentioned. To this petition the Trial Court sustained a demurrer which decision was overruled by this Court and the opinion on that matter appears in 111 Utah 428, 182 P. 2d 111. A trial was had, and from a decree awarding appellant only 4 shares of water as appurtenant to the west piece of land and denying him the east piece he appeals. The respondent cross appeals from the decision giving the appellant the 4 shares of water.

It is the contention of appellant that under the terms of his father's will he is entitled to the piece of land east of the highway and also the 10 shares of water appurtenant to the piece of land west of the highway. The respondent contends that there is no water appurtenant to the west

piece and that appellant never occupied the east piece so as to make it come within the terms of the will.

This appeal divides into four propositions which are dealt with in their respective order.

The first is, and there is much contention in counsel's briefs over this subject, can a court of Equity modify a probate decree obtained by fraud that has become final?

Appellant takes the position that as to fraud by an executrix, a fiduciary, it matters not whether it is intrinsic or extrinsic, as a fiduciary cannot rely upon a decree obtained by fraud in either event. Respondent asserts that only a decree obtained by extrinsic fraud can be modified or set aside.

Number two proposition deals with the correctness of the Trial Court's finding that water was appurtenant to the west piece of land, and is the basis of the cross appeal of Respondent.

Number three is in reference to the correctness of the finding by the Trial Court that 4, and only 4, shares of water are appurtenant to the west piece of land. Both parties take issue and appeal from this finding.

Number four deals with the finding of the Trial Court that appellant did not occupy the east piece of land and therefore was not entitled to it.

In the case of *Benson* v. *Anderson*, 10 Utah 135, 37 P. 256, 257, this Court was dealing with a situation very similar to the case at bar. The defendant in that case was the administrator of the estate of the plaintiff's deceased husband. A decree of distribution was entered distributing all of the property in the estate to himself. He was a brother to deceased and he and the widow were each entitled to one-half the estate. Plaintiff had notice of all court proceedings, no appeal was taken by her from the decree of distribution and the time for appeal had expired

when the action was brought. The Trial Court found against the plaintiff. This court in discussing the law relating to the matter said:

"It is difficult for us to see just how such a conclusion was reached, on the facts found. There is no question, in our opinion, but that the district court, sitting as a court of chancery, had power to review a decree of the probate court, where the same had been obtained by fraud or mistake that had worked a positive injustice. * * * We have no doubt, however, that the probate court was laboring under some such mistake; and, whatever the mistake was, it was of a vital character, as it effectually deprived plaintiff of the home where she had lived for 30 years, and gave the entire estate, both real and personal, to the brother of the deceased. We do not feel that we can give our sanction to such a proceeding. * * *"

In this case we accept the universal and salutary rule that judgments must be sustained; that they cannot for anything but the most compelling reasons be set aside, and that extrinsic fraud must be the basis for such an attack. To this doctrine this Court has heretofore subscribed in the case of *Anderson* v. *State,* 65 Utah 512, 238 P. 557. In that case it was sought to relitigate the question of a fraudulent conspiracy to commit perjury. That perjury is intrinsic fraud and not therefore the basis of setting aside a judgment is well recognized. In addition the plaintiff in that case failed to prove the conspiracy beyond showing that two parties in the bastardy trial testified the same. See also *Logan City* v. *Utah Power and Light Company,* 86 Utah 340, 16 P. 2d 1097.

In the case of *U. S.* v. *Throckmorton,* 98 U. S. 61, 25 L. Ed. 93, the Court was dealing with a fraudulent document in a land title case. The suit to set aside the judgment was brought some 20 years after the judgment had been entered. After discussing the sanctity of judgments and the desire of courts to put an end to litigation and also not to hold out to persistent litigants any hope of continuing litigation, and to discourage the re-trial of issues once decided by the expedient of opening up the case on the ground of some in-

trinsic fraud alleged to have happened during the trial, the Court said:

"But there is an admitted exception to this general rule, in cases where, by reason of something done by the successful party to a suit, there was, in fact, no adversary trial or decision of the issue in the case.

"Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat * * * these and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree and open the case for a new and a fair hearing * * *.

"On the other hand, the doctrine is equally well settled that the Court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed."

In the California case of *Sohler* v. *Sohler*, 135 Cal. 323, 67 P. 282, 87 Am. St. Rep. 98, the facts were that the executrix, widow of the deceased and the mother of the plaintiffs, sought to divide the estate between the plaintiffs and her adult son by a former husband. The court, in discussing extrinsic fraud in much the same language as the *Throckmorton* case, supra, went on to say that more than extrinsic fraud had been proved in that it was shown that the executrix was the guardian of the minor children whom she and the adult son had conspired to defraud. The Court, concluding that the Probate Courts have exclusive jurisdiction and that the court had no jurisdiction to set aside the decree, nevertheless held the adult son a trustee of what he had received, for the benefit of the minor children.

The *Sohler* case above appears to have been overruled or repudiated in the feature regarding the jurisdiction over probate matters, by the case of *Larrabee* v. *Tracy*, first con-

sidered by the California District Court of Appeals, reported in 126 P. 2d 947, and later affirmed by the Supreme Court of California, 21 Cal. 2d 645, 134 P. 2d 265.

The appellant in that case was the attorney, executor, and residuary legatee of the estate; the respondent, the surviving daughter of a legatee who died before the execution of the will. The will contained a clause reading as follows:

"I hereby generally and specifically disinherit each and all persons whomsoever claiming to be or who may be lawfully determined to. be my heirs at law, except otherwise mentioned in this will."

Appellant in that case first wrote the respondent inquring the whereabouts of her mother and after being informed by the respondent that her mother was dead, advised respondent that she probably would inherit her mother's share. After various letters between the parties and without advising the respondent of his change of mind in reference to her rights the appellant petitioned the Probate Court for a construction of the will.

Notice was given by posting pursuant to the statutes. In the petition the appellant alleged on information and belief that it was the desire of the deceased that the legacy to respondent's mother should lapse and become a part of the residual estate. The Probate Court entered a decree so construing the will. Quoting from the case, as reported in 126 P. 2d 947, 951, the Court's discussion covers all the elements raised in the instant case:

"Initially we desire to make it plain that an executor or administrator occupies a position of the highest trust and confidence, not only to the creditors and beneficiaries of an estate but to the Court as well, and so he is required to act in entire good faith. * * * Accordingly an executor is a trustee in the broadest sense and is held to the same high and strict accountability of a trustee. * * *

"It is clear from the letters that appellant was guilty of extrinsic fraud and that the trial court was justified in so finding. But quite apart from the extrinsic fraud, the trial court was justified in vacating the order and decree on the ground that the executor had not

made to the court a full and fair disclosure of the rights of respondent. * * *

"Here the executor in his capacity of residuary legatee was unjustly enriched by the construction placed by the court upon the will upon his ex parte showing, to the impoverishment of the legatee entitled to her legacy. It was a fraud of the most serious nature. It involved not only a breach of fiduciary duty to the respondent but a breach of duty to the court."

The Supreme Court, in affirming the judgment, cited *Bacon* v. *Bacon,* 150 Cal. 477, 89 P. 317, holding that extrinsic fraud or mistake existed where probate pleadings had understated the amount of a legacy, and the legatee, relying upon the executor's statements, failed to appear at the distribution, and said, quoting from page 489 of 150 Cal., page 322 of 89 P.:

"Executors occupy trust relations toward the legatees, and are bound to the utmost good faith in their transactions with the beneficiary. * * * They were also residuary legatees, and hence whatever was lacking in full payment to the plaintiff was so much gained to them."

Many cases are cited by counsel for the appellant dealing with the subject, among them the case of *Laun* v. *Kipp,* 155 Wis. 347, 145 N. W. 183, 5 A. L. R. 655, wherein the Wisconsin Supreme Court in a most liberal and broad point of view discusses intrinsic and extrinsic fraud. The opinion is most eloquent and generous in its views of the power of Courts of Equity and concludes that Courts of Equity are for the purpose of rendering justice against almost every obstacle of precedent and concludes that their powers are only limited by the ingenuity of man to do injustice to his fellow man. It follows the doctrine that any fraud, intrinsic or extrinsic, is sufficient ground for equitable relief. It considers the doctrine of the *Throckmorton* case to be limited and prefers to rest its decision on the broad principle above mentioned. It deals with a fraudulent trustee report concealing $20,000.00 appropriated by the trustee. While the case does not follow the rule by which this court

is bound, it is enlightening in its thought and worthy of consideration.

From the above citations it is quite apparent that this Court has the power and authority to deal with cases of the class presented; that an executor is a trustee owing an obligation to his legatees and devisees and ██ to the Court; and that a petition to the Probate Court which misconstrues the amount of a legacy or the construction of a will is extrinsic fraud, and a fortiori where the guilty executor stands to profit by his wrongful act.

The evidence shows that the land west of the highway and part of that east of the highway was acquired by David L. Rice with appurtenant water rights. It is further a fact without dispute that David L. Rice owned at the time of his death 32 shares of water in Davis Creek; that █ the executrix inventoried the land subsequently distributed to appellant "together with all water rights pertaining thereto;" and thereafter in her petition for distribution and the decree pursuant thereto left out any water appurtenant to the land distributed to appellant, and included it with the other property mentioned in said petition and decree.

It likewise is without dispute that she did not mention to Appellant or the Court that she left out water rights to appellant's land and also the barn and corral property. It also appears from the evidence that there was an application made by David L. Rice to the State Engineer's Office for water from a well on the southeast corner of the land on the west side of the highway. This application was made in the year 1936 and in the application the deceased stated that the purpose for which the well water would be used was to supplement canyon water used on the land in question.

There is no evidence that disputes the testimony of appellant and his wife in regard to the use of the water being

10 hours per week, and that appellant and his family lived in the home on the west piece of land. It is without dispute that appellant used the barn and corral property from 1937, at least in conjunction with his father; that by the terms of the will appellant was to have 27 acres more or less and that the west piece with the rights-of-way taken out leaves for his use 25.24 acres, an amount short of what the will describes as 27 acres more or less; that with the piece east of the highway added to the 25.24 acres appellant would then have 29.09 acres, an amount over 27 acres by almost the same amount under 27 acres as the usable land respondent was willing for him to have.

It is also undisputed that appellant and his family were living in the home on the west side of the highway and had been since the year 1937. The evidence also shows that there are no facilities for cattle such as barns and corrals on the west piece of land, and that the barn and corral on the east had been used by the deceased in connection with the use of the west piece for at least forty years prior to his death.

Having in mind that respondent was a sister of appellant and had lived in the same family unit for at least a part of her life and that all the above facts must have been known to her, can any reasonable person say that to deprive him of the land and water in dispute would not precipitate at least a dispute between her and him? Also having in mind that appellant by the terms of the will was to have the land he was occupying, can it be said that any executrix desiring to carry out the terms of a will under such condition would not at least petition the Probate Court for an interpretation of the will? But respondent did not do this. She proceeded to select the land on the west side of the highway and give that to appellant and she denied to him by the caprice of her own judgment the barn property on the east. This all was done by what she in effect concluded was the infallibility of her own mind and judgment to say nothing

of the gain in land and water she was to profit by as one of the residuary legatees. That she was fallible is shown by the evidence and the finding in part of the Trial Court in this matter. We believe that in view of the above facts, together with the duty she owed to appellant, she has not acted in good faith, and as her interpretation of the will is not correct in that it understates the amount he is entitled to, she has been guilty of extrinsic fraud sufficient to justify the intervention of a Court of Equity.

This opinion was divided into four parts for the purposes of discussion and having discussed the first proposition, number two and number three seem to fall in somewhat the same category and will be discussed together.

The Trial Court, after a consideration of the evidence determined that water was appurtenant to the land on the west side of the highway and in accordance therewith made findings to that effect and then awarded to the appellant only 4 shares of water as the amount deemed by the Trial Court appurtenant to the said land. After a complete reading of the record we are in accord with the Court's findings that water was appurtenant to the land west of the highway.

We are not in accord with its award of 4 shares as the amount due the appellant. It appears that the court made a proportional allocation of the total number of shares owned by deceased, namely 32, in the proportion that the total amount of land owned by him at the time of his death bore to the amount of land distributed to appellant. That finding is not supported by the evidence. Only two witnesses testified as to the amount of water that was appurtenant to the appellant's land, he and his wife. No other witness pretended to be in a position to know the amount, as most of the witnesses for the respondent testified to the effect that there was no water appurtenant to said land.

The testimony of both the appellant and his wife is to the effect that, for many years prior to the death of the de-

ceased and prior to the decree of distribution, the appellant and his father used 10 hours of water from White Ditch; that said water right is from 7:00 o'clock Wednesday night to 5:00 o'clock Thursday morning each week after the water goes on turns; that when the water is not on turns there is an unlimited right to the use of the high water. Accordingly, the decree heretofore entered in this matter and the findings should be modified to award to the appellant an appurtenant water right to said land for the period of time above indicated.

While the water right involved herein is not mentioned in the will of the deceased, being appurtenant ■ it passes with the land. *In re Johnson's Estate,* 64 Utah 114, 228 P. 748.

The fourth proposition involved in this appeal is the question of whether or not the appellant should be awarded the 3.85 acres east of the highway and that is to be determined by the evidence as to whether or not the appellant was occupying that portion of property. We are of ■ the opinion that a preponderance of the evidence is to the effect that the appellant occupied said property along with the land on the west side of the highway from the fall of 1937 until the institution of this action.

It is possibly true that the appellant's occupancy of said property was in conjunction with a partial use thereof by his father, the deceased, but the appellant's right to said property is not determined by the use that the deceased made of it or the control he may have exercised over it during all of his life and to the very moment of his death.

It may be conceded that the deceased had the right to control said land and could have occupied it solely himself but that he did so is not borne out by the evidence. The evidence is quite clear and conclusive that whatever use the deceased may have made of said barns and corral property was in many instances with the consent and approval of

the appellant, and there is evidence that deceased paid appellant for the use of any hay that was fed to his cattle.

We are therefore of the opinion that the Trial Court's judgment in this regard should be reversed and said decree and findings should be modified to award to the appellant said land east of the highway containing approximately 3.85 acres of land.

The judgment is reversed and the Trial Court directed to enter a decree in accordance with the views expressed herein.

PRATT, C. J., and WADE, LATIMER and Mc-DONOUGH, JJ., concur.

WOLFE, J., having disqualified himself, did not participate.