Bryan WHITE and Frances H. White,
Appellants (Defendants below),

v.

BOARD OF LAND COMMISSIONERS for
the State of Wyoming and A. E. King,
Commissioner of Public Lands for the
State of Wyoming, Appellees (Plaintiffs
below).

No. 4919.

Supreme Court of Wyoming.

May 17, 1979.

John A. MacPherson (argued), of Mac-Pherson, Golden & Brown, Rawlins, for appellants.

V. Frank Mendicino, Atty. Gen. and Christan P. Mai, Asst. Atty. Gen. (argued), for appellees.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

GUTHRIE, J., delivered the opinion of the court.

GUTHRIE, Justice, Retired.

The questions presented by this appeal concern the rights of lessees attaching as a consequence of a decision of the State Land Board to sell certain school lands, which they have leased through the years. The case arises out of a declaratory judgment action instituted by the Board following a delay in the attempted sale of the land

* At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5-1-106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

occasioned by the asserted claims of appellants to all appurtenant water rights, ditches, and ditch rights. The district court entered an order in favor of the Board, which determined that appellants were not entitled to a preferential right to meet the highest bid in the event the land would be sold at public auction, that they were not entitled to compensation for three water rights and all ditches and ditch rights that had been secured and developed by the predecessor in interest of appellants for irrigation of the land, and that they had forfeited their entitlement to any compensation for improvements on the land in excess of $750.00. We reverse the judgment insofar as appellants were denied the right to meet the highest bid in the event of sale and affirm the judgment as to the other aspects.

The facts are similar to those appearing in an earlier suit in this court, being *King v. White,* Wyo., 499 P.2d 585 (1972), and will be repeated insofar as necessary for clarity. In 1901, Herbert King secured his first lease upon school lands located in Carbon County and legally described as Section 36, Township 19 North, Range 78 West of the 6th Principal Meridian. King perfected three direct-flow irrigation rights on these lands. Two of the water rights have a priority date of February 14, 1908, and were secured under a renewal lease for a five-year term, which expired in 1911. A supplemental direct-flow water right from Rock Creek was subsequently perfected with a priority date of July 21, 1921. King held leases on Section 36 continuously until November, 1957, when he assigned it to appellants. The assignment was approved by the Board, and in 1959, appellants secured a ten-year renewal lease on these premises with an expiration date of March 1, 1969.

On February 17, 1969, appellants applied for a renewal of their lease, but the Commissioner of Public Lands in a decision rendered after expiration thereof recommended that the section be sold, noting the controversy with appellants over ownership of water rights and the long-standing disagreements over the section between appellants and the Wheatland Irrigation District. The Commissioner's decision advised that the water rights appurtenant to the land were to be sold with the land, that the purchaser would have to pay the State for these rights, and that appellants did not have a preferential right to meet the high bid in the event the land was sold. Appellants appealed the decision to the Board asserting a claim to the water rights and that they should be compensated for the appraised value thereof when Section 36 was sold. The Board entered its findings of facts and conclusions of law on February 4, 1970, which affirmed the Commissioner's decision with respect to ownership of the water rights but ordered that appellants shall have their right to meet the high bid at the public auction.

The question of ownership of these water rights and entitlement to payment therefor was ultimately reviewed in *King v. White, supra,* but the case was postured upon the effect of the lease assignment in 1957. This court held that appellants secured no title to the water rights perfected by King by virtue of the assignment but only the right to the use and enjoyment of them during the term of the lease.

Following the issuance of the mandate in *King v. White, supra,* the Commissioner advised appellants by letter, dated November 20, 1972, of the Board's decision to sell Section 36 at public auction for the highest responsible bid, and further advised in a letter of December 26, 1972 that they were merely lessees of an expired lease and would not be granted a preferred right at the sale. At that time appellants had acquired two quitclaim deeds, recorded on December 22, 1972, from Ester L. Hansel and Alfred Herbert King, purporting to convey to appellants all the water rights, ditches and ditch rights secured by King on this section. After the proposed sale was advertised as required by the statute, the Commissioner appeared at the courthouse in Rawlins, Wyoming, on January 26, 1973 to conduct the public auction and sale of the section and all appurtenant water rights and ditch rights. Before the auction com-

menced, Bryan White appeared with his attorney, announcing publicly a claim of ownership to all appurtenant rights. The Commissioner held up the sale until these issues could be resolved.

The issue raised by the first count of the Board's complaint concerns the validity of the Board's decision of February 4, 1970, which held that appellants shall have the right to purchase the subject land for the amount of the highest responsible bid as provided by what is now denominated as § 36–9–101, W.S.1977. That statute gives a lessee of state land or a lessee holding an expiring lease at the time of sale what is commonly known in contract law as a pre-emptive right or right of first refusal. Appellants argue that the doctrines of *estoppel* and *res judicata* apply to final decisions of the Board and preclude the Board from denying the existence of a vested right, *i. e.,* to meet the bid of the highest bidder at the sale. The Board concedes the holding of its earlier decision, but asserts that the decision can now be reversed because it was not in conformity with the statute.[1] Although the issue as framed by the parties is intriguing, at no stage of the proceedings have either the parties or the district court raised the question whether the allegations of this claim for declaratory relief set out a justiciable issue necessary to exercise of its jurisdiction.

Parties cannot confer jurisdiction by consent. *Church v. Quiner,* 31 Wyo. 222, 224 P. 1073 (1924); *Poston v. Delfelder,* 39 Wyo. 163, 270 P. 1068 (1928); and jurisdiction of subject matter cannot be waived. *Steffens v. Smith,* Wyo., 477 P.2d 119, 121 (1970). We have an obligation to independently consider and pass upon it. *Pritchard v. State, Div. of Voc. Rehab., Dept. of H. S. S.,* Wyo., 540 P.2d 523, 524 (1975); *Bowman v. Worland School District,* Wyo., 531 P.2d 889, 891 (1975). This inquiry is necessary because the action was filed under the Uniform Declaratory Judgments Act, §§ 1–37–101 to 1–37–114, W.S.1977, and we have held that before a court can proceed to grant relief under the act, there must be

present a justiciable controversy, being a jurisdictional requirement. *Mountain West Farm Bureau Mutual Insurance Company, Inc. v. Hallmark Insurance Company,* Wyo., 561 P.2d 706 (1977); *Anderson v. Wyoming Development Co.,* 60 Wyo. 417, 154 P.2d 318 (1944). This is an unusual case inasmuch as the other issues presented to the district court met the justiciability requirement and were properly before the court. We disapprove, however, of the Board using the vehicle of a declaratory judgment suit to obtain a review of the validity of its own decision. The factual posture of this case makes the following most appropriate:

> "Courts do not have the power to give legal advice or opinion. 'The relief sought should not merely be legal advice by the courts or to give an answer to satisfy curiosity.' [citing authorities] 'It was not the intent of the Declaratory Judgment Statute to confer jurisdiction on the courts to be legal advisers of all the political subdivisions of this State . . . .'" *Collins v. Horten,* Fla.App., 111 So.2d 746, 751 (1959).

The stipulation of facts upon which the trial court made disposal of this case contains nothing which would demonstrate any present, real controversy between these parties. The stipulation does recite the fact that the Board of Land Commissioners had held that these appellants had a preferential right to meet the highest bid for this land and further recites that this decision was not appealed. The only other mention of this right is that the State on December 26, 1972, notified the defendant that they "will not be granted a preferential right at the January 26, 1973, sale."

We have heretofore recognized that the Declaratory Judgment Act gives the courts no power to determine future rights or anticipated disputes or controversies and must treat them as existing and genuine. *Cranston v. Thomson,* Wyo., 530 P.2d 726, 728–729 (1975). The statement in the letter clearly sets out an intention to deny this right in the future.

1. Because of the basis of our disposal of this matter, we do not consider these contentions.

In face of the fact that there is an existing and unappealed order of the Land Commissioners granting to appellants such preference right and under which they claim, this record, by virtue of the stipulation and letter of the Commissioner of December 26, puts into proper perspective what is sought by this action. It would appear that the appellees in effect proposed to the lower court that this court should advise them whether this unappealed order is still in force and effect or whether the Commissioner can properly overrule the Board and set aside such unappealed order.

■ This is a request for legal advice and opinion as to the effect of the Commissioner's action and to ask the court which governs, yet this question can only arise in the event appellants exercise such right to meet the bid after such sale and in the future. It is altogether possible that the bid might be in excess of what the appellants believe to be the value of the land, it might be beyond their resources, or they might simply lose interest in buying this land. From this, it is apparent that any decision would be the "determination of a future right" and that the relief sought is for "an anticipated controversy".[2]

The first count of the Board's complaint attacking its own ruling did not raise an actual controversy within the strictures of our Declaratory Judgment Act, and the district court lacked jurisdiction to properly consider it. Having no greater jurisdiction of this issue than did the district court, we are obligated to order the dismissal of this count. *Ginn v. Parrish,* Wyo., 362 P.2d 824, 828 (1961). This disposal in no way affects our jurisdiction to hear the other justiciable issues presented for our consideration.

The second issue presents a number of questions with regard to the nature of the title obtained by King when he perfected the 1908 and 1921 water rights under then existing leases and the transferability of these rights by King as a lessee of the lands owned by the State. This question was not reached in *King v. White, supra,* but, as the case is now postured before the court, we must determine whether the conveyances from the heirs of King vested ownership of the water rights, ditches and ditch rights in appellants and entitled them to payment for the appraised value thereof when Section 36 is sold. The issue calls for the application of § 36-9-105, W.S.1977, which provides in pertinent part:

"*If any state lands be sold* upon which surface improvements, including irrigation works of any kind, have been made by a lessee, or *for which water rights* or proportionate interests in irrigation, reservoirs, canals, or systems, *have been acquired,* said improvements, irrigation works and water rights shall be appraised under the direction of the board. *The purchaser of said lands,* upon which improvements and irrigation works have been made, or *for which water rights have been acquired* as herein provided for, *shall pay the owner of such* improvements, irrigation works or *water rights,* as the case may be, the appraised value thereof, and take a receipt therefor, and shall deliver the same to the commissioner of public lands before he shall receive a patent or certificate of purchase. . . ." (Emphasis supplied.) (This being § 824, R.S.1899, mentioned herein as it has been amended.)

This case must be approached with caution, and it is necessary that we confine our discussion to the unique circumstances herein, which call for a consideration of the rights of a lessee resulting from the contract and the public interest in the proper administration of the lands and waters owned by the State.

■ These water rights and the ditch rights and ditches necessary to serve the appropriations are appurtenant to Section 36 and, therefore, are a part and parcel of those lands. *Bard Ranch, Inc. v. Weber,* Wyo., 538 P.2d 24, 33–34, *rehearing denied sub nom., Final Proof of Appropriation of Following Water Rights,* Wyo., 541 P.2d 791

---

**2.** The court also questions the propriety of inflicting a burden upon these appellants to appear and litigate this question for the benefit of the appellees.

(1975); *Frank v. Hicks,* 4 Wyo. 502, 35 P. 475, 484 (1891), *rehearing denied* 35 P. 1025 (1894). A water right that is appurtenant to the land will pass therewith even though it is not mentioned in the will, *Rice v. Rice,* 117 Utah 27, 212 P.2d 685, 691 (1949), but the water rights here could not be conveyed or devised separately or in derogation of the rights of the State, which at all times has been the owner in fee of the section. We find decided case authority of little help in this matter because of the fact that ownership had vested in the State and the appropriations appear in the name of King, who never had any interest in these lands with the exception of a possessory right.

When King perfected the two direct-flow rights in 1908 under a five-year lease, which expired in 1911, § 816, R.S.1899, was in full force and effect. That section, which was enacted in 1890, provided that appurtenant water rights acquired by the lessee of state lands shall become the property of the state upon expiration of the leases given to the lessee and shall not be considered as improvements subject to any reimbursement by any subsequent lessee or purchaser of the lands.[3] The contract of lease was subject to the terms of the statute then in effect at the time of execution, and the rights of appellants as lessees that would arise by virtue of that agreement included the provisions of that statute. This court has held in a case involving an oil and gas lease on undeveloped state lands that the laws in effect and in force at the time of the making of a contract become a part thereof. *Application of Hagood,* Wyo., 356 P.2d 135, 138 (1960); *see also Todd v. Board of Educational Lands and Funds,* 154

Neb. 606, 610–611, 48 N.W.2d 706 (1951); 63 Am.Jur.2d *Public Lands,* § 116. It was not until 1909 that the legislature amended what had been § 824, R.S.1899,[4] to strike the exception that had appeared in the earlier statute, which was "excepting irrigation ditches and irrigation works," and to require the purchaser of any state lands to pay the lessee who constructed irrigation works on or acquired water rights for the subject lands. Ch. 132, § 2, Laws 1909. That section, as amended, was the predecessor to what is now § 36–9–105, *supra.*

It is true that in *State ex rel. Marble v. Carey,* 26 Wyo. 300, 183 P. 785 (1919), this court held that § 816, *supra* (described as § 616, W.C.S.1910, in that opinion), had been impliedly repealed by the amended version of § 824, *supra* (designated in that opinion as § 632, W.C.S.1910). In *King v. White, supra,* we did set out the fact that this case had to be examined with care and stated our view that this case was to be read only as being strictly confined to the factual situation therein. We distinguished *Carey,* noting that the water rights involved were secured in 1876, 1885, and 1886. During those years, there was no requirement that the application for filing a water right contain a description or plat of the lands upon which the water was to be used. These requirements did not become effective until 1890, Ch. 8, §§ 34, 35, Laws 1890, and distinguishes the rights of King from those in *Carey,* because in the latter case there would have been no way to definitely determine upon which lands those rights were to be used.

---

**3.** Section 816, R.S.1899, read as follows:

"All water rights which shall have become appurtenant to the lands leased aforesaid shall, upon expiration of the leases given to the lessee who made the irrigation and improvements thereto, become the property of the state, and shall not be considered as being improvements, which any subsequent lessee or purchaser thereof shall be obliged to reimburse or pay such original lessee who made such improvements thereon."

**4.** Section 824, R.S.1899, as it appeared prior to 1909:

"If any state lands be sold upon which surface improvements have been made by a lessee (except irrigating ditches and irrigating works), said improvements shall be appraised under the direction of the board. The purchaser of state lands upon which improvements have been made, as herein provided for, shall pay the owner of such improvements the appraised value thereof, and take a receipt therefor, and shall deliver the same to the register before he shall receive a patent or certificate of purchase. All such receipts shall be filed and preserved in the office of the register."

The court in *Carey* did give lip service to the principle that repeals by implication are not favored, but it painted with a broad brush and arrived at the conclusion that § 824, as amended, *supra,* had repealed by implication § 816, *supra.* The rationale for the decision was that these statutes were not only clearly inconsistent, but that the laws expressed a clear intent by the legislature that the earlier statute be substituted and that the later provision would govern. No attempt was made in that opinion to construe the two statutes harmoniously as constituting one law; *In re Adoption of Female Child X,* Wyo., 537 P.2d 719, 723 (1975); *Woolley v. State Highway Commission,* Wyo., 387 P.2d 667, 673 (1963); nor was it considered that the section that they suggested was repealed could have been retained to apply to all water rights with a priority dated from 1890, at least until the amendment to § 824, *supra,* was enacted in 1909. Making no disposal of this possibility, the court did not consider the proper rule of statutory construction, which is that both sections so construed might well have stood beside each other and would not have been in conflict in those areas. *Wyoming State Treasurer v. City of Casper,* Wyo., 551 P.2d 687, 697 (1976); *City of Casper v. Joyce,* 54 Wyo. 198, 88 P.2d 467, 473 (1939). This approach would have enabled the construction of these statutes to eliminate any conflict.

It is noticed that § 816, *supra,* remained unrepealed upon the statute books until 1929, when it was repealed by two separate enactments, being Ch. 21, Laws 1929 and Ch. 108, Laws 1929. Thus, it might also be suggested that by the failure to directly repeal § 816, *supra,* the legislature intended at least a prospective application of the later amendatory statute because it makes reference merely to the "owner of such . . . water rights" and might have been directly intended to affect only such rights as were secured after the enactment of the amended version of § 824, *supra,* or to apply to water rights perfected before 1890. This writer cannot find any clear intention by the legislature to deprive the state of valuable property rights, which

would be the effect of such holding. Slavish adherence to *Carey* is completely adverse to the interest of the Permanent Land Fund; and since it was based upon an absolute minimum of authority and without any consideration of certain necessary elements to determine if these sections were completely repugnant, we feel it our duty to reiterate, as we did in the earlier case affecting these parties, that *Carey* must be confined to the factual situation that confronted the court in that case and is not controlling authority under any other factual situations. To have held differently would have involved a constitutional question of due process upon that phase.

■ It logically follows that we must hold that pursuant to § 816, *supra,* the water rights perfected in 1908 became the property of the state when the lease, under which they were secured, expired in 1911, and that neither King nor his heirs could have conveyed the same. *See* the concurrence of Justice McIntyre in *King v. White, supra* at 590, which asserts this proposition. This, then, leads to the consideration of the status of the supplemental water right perfected in 1921, which presents a different question because of the interposition of the 1909 amendment and the necessity to consider its effect. The question, however, cannot be properly resolved without reviewing the applicability of the following portion of § 41–3–101, W.S.1977:

". . . Water being always the property of the state, *rights to its use shall attach to the land for irrigation,* or to such other purposes or object for which acquired in accordance with the beneficial use made for which the right receives public recognition, under the law and the administration provided thereby. . ." (Emphasis supplied.)

This section, then denominated as § 724, W.C.S.1910, was first enacted in 1909, being the same year that the amendment in question was passed. Ch. 68, § 1, Laws 1909.

■ A reading of the two statutes may suggest the existence of a conflict with regard to the actual owner of the 1921

direct-flow right. Section 724, *supra,* which was effective February 20, 1909, offers the conclusion that King could not have been the "owner" of the right because it was developed for irrigation purposes on state lands and thereby became the property of the state. On the other hand, § 632, W.C.S. 1910, effective February 27, 1909, suggests that King, being the individual who acquired the water right for state lands, was the "owner" of the right and was entitled to payment for its appraised value by the purchase. We are aware of the rule that when two statutes covering the same general subject conflict, the later special statute controls over the general statute to the extent of the conflict. *State ex rel. Pearson v. Hansen,* Wyo., 401 P.2d 954, 958 (1965); *Fugate v. Mayor and City Council of Town of Buffalo,* Wyo., 348 P.2d 76, 83, 97 A.L.R.2d 243 (1959). We have further recognized the principle that when two statutes, which are impossible to construe harmoniously, are approved during the same session of the legislature, the statute taking the later effect is controlling. *Department of Revenue and Taxation, Motor Vehicle Division v. Shipley,* Wyo., 579 P.2d 415, 418 (1978). We would be ill-advised to stop at this point and dispose of the question on these principles without giving consideration to reconciling the apparent conflict between the two statutes. The result would be tantamount to legal sophistry. The question here is whether King or his heirs had an interest in this water right that could be transferred separate from the land. It is suggested that the question can be properly answered by a construction of these statutes that eliminates any conflict as to the meaning of "owner."

This court has previously held that an application for a permit to appropriate water for irrigation pursuant to what is now § 41–4–501, W.S.1977, did not necessarily have to be for the benefit of the applicant. *Scherck v. Nichols,* 55 Wyo. 4, 95 P.2d 74 (1939). In that case, the court interpreted the statute to place its main stress on the beneficial use of water, stating the act of appropriation may be undertaken by an individual other than the person who actually possesses the water and applies it to beneficial use, the only restriction being that the water not initially be diverted for idle or speculative purposes. Moreover, *Scherck* is noteworthy for its interpretation of the predecessor to § 41–3–101, *supra,* upon which it relied in resolving the question whether an applicant could sever the water right initiated for the lands of another by a conveyance of his interest in his applications and permits. This court stated that the statute "adopted the policy that a water right by direct flow from a stream shall be attached to land[,]" *Id.* 95 P.2d at 80; and that a water right upon land, which is mentioned in the application and permit for appropriation, becomes attached to that land when it is finally adjudicated and cannot be subsequently severed from it or conveyed in derogation of the rights of the State. *Bard Ranch, Inc. v. Weber, supra.*

■ Even though King undertook the act of appropriating the 1921 right and further put it to beneficial use, we find that the rationale of *Scherck* is compelling here. King's actions were appropriately those of an intermediate agent for the state, who was and is the owner of the lands that received the ultimate benefit of this appropriation. All statutes are presumed to be enacted by the legislature with a full knowledge of the existing state of the law with respect to the subject matter, *DeHerrera v. Herrera,* Wyo., 565 P.2d 479, 483 (1977); *Matter of Adoption of Voss,* Wyo., 550 P.2d 481, 486 (1976); and it is suggested that when the legislature enacted the 1909 amendment of the predecessor to § 36–9–105, *supra,* it intended to devise a method to compensate lessees who, among other things, acquire water rights for the benefit of state lands. The statute, as well as other related sections, has a sound policy objective of encouraging lessees to advance the permanent improvement and value of state lands by the investment of their own labor and money. *Cooper v. McCormick,* 10 Wyo. 379, 69 P. 301, 305 (1902). We will not allow subsequent state lessees to subvert the intent of the statute by using it to reap the fruits of another's promissory right.

We now hold that when King secured the 1921 appropriation of water for state land, he was acting as an intermediary on behalf of the state and held this right for its use and benefit, and that pursuant to the general law in effect since 1909, neither he nor his heirs owned any interest in the right that could be conveyed separate from the land. This holding in no way adversely affects the requirement under § 36–9–105, *supra,* that the purchaser has to pay a lessee who acquires water rights *during the term of his lease* for the appraised value of these rights.

The final issue also concerns compensation for improvements and the effect of § 36–5–110, W.S.1977. That section provides that if a lessee or any other person desires to construct or make improvements upon state lands, he must seek approval from the Board of Land Commissioners when the value of the improvements will exceed $750.00. Any excess improvements erected without permission of the Board are deemed upon expiration of the lease to forfeit to and become the property of the state with the exception of improvements removed in a certain manner by the owner within 60 days from the date of the expiration of the lease.[5]

Appellants have been content to limit their argument to an attack upon the district court's apparent reliance on the statute as an alternative basis for denying compensation for the appraised value of the 1908 and 1921 water rights. While we agree that § 36–5–110, *supra,* which was effective April 2, 1929, cannot be given retroactive application to facts of this case, this holding, nevertheless, does not change or otherwise affect our disposition of this matter. In these circumstances, we find it unnecessary to consider the expanded arguments presented by the Board.

The declaratory judgment entered here is reversed in part and remanded to the district court with directions to dismiss the first count of the Board's complaint for want of jurisdiction and is affirmed as to its other parts.

---

5. Section 36–5–110, *supra,* also provides that failure of the owner to obtain permission as required by the statute will not entitle him "to compensation therefor as hereinafter provided." Section 36–5–111, W.S.1977, requires a subsequent lessee, as a condition to obtaining a lease, to pay the commissioner of public lands for the benefit and use of the owner for the appraised value of any improvements, including water rights, not forfeited under the provision of the act. These statutes appear in the chapter governing the leasing of state lands and do not expressly refer to the chapter concerning the sale of state lands. Whether compliance with § 36–5–110, *supra,* is a predicate for compensation under § 36–9–105, *supra,* is a question that need not be reached here.